Virginia B. WROBLEWSKI, Appellant,

v.

Joseph CALIFANO, Jr., Secretary of
Health, Education and Welfare of
United States, Appellee.

No. 79–1147.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1979.

Decided Nov. 21, 1979.

Robert J. Albair (argued), Sullivan & Watkins, Clayton, Mo., for appellant; A. Michael Sullivan, Clayton, Mo., on brief.

Bruce D. White, Asst. U. S. Atty., St. Louis, Mo., for appellee; Robert D. Kingsland, U. S. Atty., Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., Paul P. Cacioppo, Regional Atty., Region VI, and Caroline McB. French, Deputy Regional Atty., Dept. of Health, Education and Welfare, Kansas City, Mo., on brief.

Before GIBSON, Chief Judge, and HEANEY and ROSS, Circuit Judges.

GIBSON, Chief Judge.

Mrs. Virginia Wroblewski (claimant) appeals from an order of the United States District Court for the Eastern District of Missouri upholding the decision of the Secretary of the Department of Health, Education and Welfare to deny her disability benefits. We reverse and remand for further evidentiary hearings.

On February 28, 1977, claimant filed an application with the Social Security Administration to establish a period of disability under 42 U.S.C. § 416(i)(2) (1976) and to obtain disability insurance benefits as provided in 42 U.S.C. § 423 (1976). The application was denied by the Administration after initial consideration and again following reconsideration. Upon claimant's request, an evidentiary hearing was held on October 18, 1977. The administrative law judge (ALJ) concluded that the claimant was not under a "disability" at any time prior to June 30, 1976, the last date that she was under the coverage of the Social Security Act. This decision was affirmed by the Appeals Council. This determination constituted a final decision under 42 U.S.C. § 405(g) (1976) which provides for judicial review by the district court. Pursuant to this provision, the claimant filed a complaint in the United States District Court for the Eastern District of Missouri. On December 14, 1978, the court granted the Secretary's motion for summary judgment based upon the magistrate's recommendation, to whom the motion had been referred. On appeal, claimant argues that the district court erred in finding the decision of the Secretary to deny her benefits was supported by substantial evidence on the record as a whole.

I

Claimant presented the following relevant evidence to the ALJ. Claimant testified that she was born on July 18, 1924, has a high school education, and has had vocational training in cosmetology. Her work record reveals no evidence that she was a malingerer. Claimant's prior employment experience includes working a punch press, being a waitress, and working as an apartment manager and payroll clerk. For approximately ten years claimant worked in Florida as a cosmetologist prior to moving to Missouri in 1973. From 1973 until April 9, 1974, claimant did billing and bookkeeping work for her husband, an auto mechanic. On the latter date, claimant was involved in a traffic accident.

On April 9, 1974, claimant's vehicle was struck from the rear by another automobile. Immediately after the collision, she was hospitalized from April 9 to April 30, 1974. Dr. James T. Farrell, D.O., diagnosed her injuries as ligamentous strain and vertebral trauma, especially in the low back, and radiating down the left and right legs. Doctors

W. F. Luebbert, D.O., and B. C. Vermilyea, D.O., also examined the claimant during her stay at the hospital. Both found her to be suffering from lumbrosacral sprain. Dr. Vermilyea also noted some demineralization throughout the osseous structure and recommended traction and other therapy. According to Dr. Vermilyea, the claimant recovered satisfactorily from the accident.

In the latter part of 1974, claimant visited Dr. Udaya N. Dash, M.D., a board-certified orthopaedic surgeon, complaining of low back pain and left sciatica. Dr. Dash performed a laminectomy and spinal fusion between L–5, S–1, with removal of a disc from the L–5, S–1 interspace. According to Dr. Dash's written report of March 16, 1977, claimant "took a long time to recover from surgery but still had persistent pain in the back and lower extremities." About eight months later, claimant fell and broke her left wrist, which was treated by Dr. Dash on July 28, 1975.

On July 6, 1975, claimant was again hospitalized this time for an elective biopsy for lesion of the right breast and for excision of a ganglion on the right wrist. Dr. Rodriguez, M.D., performed the excision of the breast lesion, subsequently found to be nonmalignant. Dr. Dash excised the wrist ganglion.

Claimant was again admitted to the hospital on June 25, 1976, with complaints of diffuse chest pains with questionable radiation to the neck and left arm. Dr. Rodriguez had the hospital perform a full panoply of tests, including an electrocardiogram, X-rays of the thoracic spine and skull, and an esophogram. The results of these tests were essentially negative, although Dr. Rodriguez diagnosed musculoskeletal and chest pain, mild hyperglycemia and acute sinusitis. The X-ray findings also demonstrated that the cervical spine had "no evi-

dence of fracture, subluxation, or bone destruction."

On the date of claimant's discharge, July 3, 1976, Dr. Rodriguez summed up her condition as follows:

This patient has a history of previous orthopedic problems in the neck and back and hands and she was seen in consultation by Dr. Dash who did not advise any specific treatment. The general condition of the patient has been improved. She continued with vague generalized muscular pain and she was instructed that this pain is going to be there for awhile and should be treated symptomatically.

On January 30, 1977, over six months past claimant's last eligible date of disability coverage, claimant was readmitted to the hospital with urinary tract complaints, in addition to complaints of chest, neck and shoulder pain. Dr. Robert M. Maloney, M.D., had numerous tests performed, including chest X-rays, a pyelogram, nephrotomogram and renal arteriogram. Dr. Maloney, in consultation with Dr. Dash, concluded that the patient suffered from cervical radiculitis and partial ankylosis of the left wrist.

Less than a week later, on March 11, 1977, Dr. Dash again examined the claimant. Dr. Dash found that: "Neurological examination of both lower extremities did not reveal any motor, sensory or reflex deficit. X-rays of her cervical spine revealed nothing abnormal except osteoporosis. X-rays of the lumbar spine revealed that the spinal fusion between L–5, S–1 appeared solid." Despite these findings, Dr. Dash concluded that the claimant "is disabled because of [the] extensive nature of her pain in the back, neck, left wrist and both lower extremities." [1]

---

1. The record does not make clear whether Dr. Dash was referring to claimant's condition as of June 30, 1976, or on the date of his written report, March 16, 1977. This ambiguity should be clarified on remand. Ambiguities of this type could often be eliminated if the medical testimony in the record did not consist entirely of written reports. The presentation of expert medical witnesses should provide for a more full and adequate record, thus conserving the resources invested by all concerned when an appeal is brought. *See Davis v. Califano*, 605 F.2d 1067, 1072 & n.6 (8th Cir. 1979); *Stephens v. Secretary of HEW*, 603 F.2d 36, 37 (8th Cir. 1979).

Finally, the claimant was hospitalized between October 20, 1977, and November 9, 1977, complaining of persistent chest pain, neck pain, pain in both upper extremities, and bladder problems. Upon Dr. Rodriguez's approval, a urethroplasty and urethropexy were performed by a urological surgeon as a result of a cystoscopic test which revealed urethral stenosis. The urologist concluded that the "[p]ost operative course was smooth * * * patient was discharged voiding well with good urinary stream and control." Also upon Dr. Rodriguez's recommendation, a neurologist examined the claimant and concluded that "[t]his patient has a possible cervical radiculitis" and recommended cervical traction. Upon Mrs. Wroblewski's discharge from the hospital on November 9, 1977, Dr. Rodriguez made the following final diagnosis: (1) stress incontinence; (2) chronic cervical radiculitis; (3) cervical strain; and (4) anxiety reaction with depression.

The claimant presented no expert medical witnesses at the administrative hearing. She and her attorney relied upon the written medical reports, summarized above, and her own testimony to establish her disability. *See Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The claimant testified at the administrative hearing that she could no longer take care of a house, drive a car, participate in sporting activities, or engage in any other physical activities of any kind due to her inability to stand or sit for more than five minutes without the onslaught of great pain. Claimant further testified that her condition forced her to wear a back brace and remain in bed for at least half of each day.

Following the claimant's testimony, the Government presented an independent vocational expert, Dr. Arthur Smith. The ALJ asked the following hypothetical questions of Dr. Smith:

Q. Under the assumption that I will find from the medical evidence in this case, that there is no medical impediment to Mrs. Wroblewski performing light work activity, the same as described by you, do you know of any jobs that would exist in this region for which you feel that she is vocationally qualified to perform, based on her age, education, training, and background?

A. Well, the most obvious ones are those that she has already performed. She had functioned as a waitress * * *. And then her primary area, or occupational pursuit, that of cosmetologist, is classified light.

Q. Using the same assumption, only substituting the sedentary work activity for light work activity, what is your answer?

A. Again, going back to the types of work that she has done previously, which have sedentary classifications, that of payroll clerk, billing clerk * * *. These jobs fall into the category of sedentary occupations which would be within the range of her vocational capacity.

The claimant's attorney then cross-examined Dr. Smith:

Q. Physically, do you think that, from the testimony that you've heard, and any opinion you might have from the evidence as presented here today, do you think that she can gainfully perform any one of those jobs?

A. Cumulatively, if you pose a hypothetical to me, based upon the statements that she has made and given all those impairments, my response would be no.

Based upon the evidence submitted at the hearing, the ALJ found that "[t]he claimant was not prevented from engaging in substantial gainful activity at any time on or before June 30, 1976, the date she last met the earnings requirements, for a continuous period which lasted or could be expected to last for at least 12 months." Therefore, the ALJ concluded that the "claimant was not under a 'disability' as defined in the Social Security Act, * * *" as of June 30, 1976.

The decision of the administrative law judge was affirmed by the Appeals Council.

The claimant then brought a second action in the district court. The district court determined that substantial evidence on the record as a whole supported the decision of the administrative law judge and granted the Secretary's motion for summary judgment.

## II

■ The issue presented for our consideration is whether substantial evidence on the record as a whole supports the determination that claimant was not disabled as of June 30, 1976. For the reviewing court, substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Stephens v. Secretary of HEW*, 603 F.2d at 41 (8th Cir. 1979). *See also Celebrezze v. Bolas*, 316 F.2d 498, 501 (8th Cir. 1963).

This court has stated a three-fold requirement for the determination of disability

under 42 U.S.C. § 423 (1976):[2] (1) a medically determined physical or mental impairment which has or will last at least twelve months; (2) inability to engage in any substantial gainful activity; and (3) the inability must be by reason of the impairment.[3] *Stephens v. Secretary of HEW, supra* at 41; *Johnson v. Califano*, 572 F.2d 186, 187 (8th Cir. 1978); *Dressel v. Califano*, 558 F.2d 504, 506–07 (8th Cir. 1977); *Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975).

■ The claimant has the burden of establishing the existence of her disability, but that burden shifts to the Secretary upon a showing by claimant of an inability to perform her past occupation due to a medically determinable ailment. *Stephens, supra* at 41; *Lewis v. Califano*, 574 F.2d 452, 455 (8th Cir. 1978); *Timmerman, supra* at 443. Once such a showing has been made the Secretary must then demonstrate that the claimant can perform some other type of substantial gainful employment.

2. "Disability" entitling claimant to insurance benefits is defined in Section 423(d)(1)(A) and (2) as follows:

* * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *.

[A]n individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy * * *.

3. A commentator, in an excellent article, has suggested an alternative "reasonable expectations" test:

The court's concern for individual worker expectations is fully consistent with the history and conduct of the Social Security disability insurance program. When a judge reverses a denial of benefits, he should be seen as saying that the program's purpose is to assure income related to prior earnings when a claimant can make a sufficient showing of certain sorts of random bad luck, and that the showing made by the claimant is sufficient, in that most persons (1) would want to be covered if they could make such a

showing; (2) would except a disability insurance program to cover them in such circumstances; and (3) are prepared to pay the costs of coverage for all such cases as are likely to arise. This focus on the reasonable expectations of Social Security participants suggests the need for fact-finding procedures open to allegations of pain; to assertions that a physical accident has led to changes in personality so drastic as to prevent effective work; and to claims that an individual is disabled even if he declines a dangerous and frequently unsuccessful operation. The central characteristics of Social Security disability insurance should be a claimant's climb to a place in the labor force, his loss of that place due to one of a category of external risks we have decided to spread among all workers, and his current inability to achieve income without a degree of effort or suffering that persons generally would regard as unnecessary for someone with this individual's thresholds of pain and discomfort. These are exceedingly individualized determinations, to be sure, but they are necessary if this program is to perform its appropriate task. Liebman, *The Definition of Disability in Social Security and Supplemental Security Income: Drawing the Bounds of the Welfare Estates*, 89 Harv.L.Rev. 833, 846–47 (1976) (footnotes omitted).

*Boyer v. Califano,* 598 F.2d 1117, 1118 (8th Cir. 1979); *Brinker v. Weinberger,* 522 F.2d 13, 17 (8th Cir. 1975); *Celebrezze v. Bolas, supra,* 316 F.2d at 507.

In this case, the ALJ determined that the claimant was able to do work she had engaged in previously, including "filing clerk, apartment manager, billing or payroll clerk, manicurist * * *." Claimant had been employed exclusively in billing and bookkeeping work for her husband from 1973 until her accident in April 1974. The ALJ found the claimant did not meet her burden of showing an inability to perform her past occupation due to a medically determinable ailment.

■ The record contains uncontroverted evidence that claimant met the first requirement of demonstrating a medically determined physical or mental impairment which has lasted or will be expected to last at least twelve months as of June 30, 1976. Dr. Rodriguez's statement on July 3, 1976, contained the diagnosis and prognosis that the claimant had a "history of orthopedic problems in the neck and back and hands" with generalized muscular pain which "is going to be there for awhile." Furthermore, Dr. Dash, on March 11, 1977, confirmed Dr. Rodriguez's prognosis,[4] concluding that the claimant "is disabled because of [the] extensive nature of her pain in the back, neck, left wrist and both lower extremities." We find that the ALJ's finding that claimant is able to "function in a normal manner both mentally and physically [as of June 30, 1976]" was not supported by substantial evidence.[5]

The burden, however, remained on the claimant to establish that she was unable to perform her former work, a necessary condition to fulfilling the second requirement of an inability to engage in any substantial gainful activity. Claimant testified at the hearing, uncontroverted by either her own medical records or by the Secretary, that she was unable to stand or sit for more than five minutes without the occurrence of substantial pain, as a result of her medical disability. She also testified that the dexterity of her hands had decreased to the point of numbness at times.

■ In the absence of countervailing evidence by the Secretary, the record on the whole establishes that the claimant met her burden of demonstrating an inability to perform her former work of either cosmetology or bookkeeping. The Secretary presented no medical evidence to contradict Dr. Rodriguez's and Dr. Dash's medical evaluations. Instead, the Secretary relied upon the testimony of a vocational expert. We find, however, that the hypotheticals submitted to the vocational expert were improper and should not have been considered by the ALJ in determining whether the claimant could return to her former work or engage in any substantial gainful activity. At this point, the burden shifted to the Government to demonstrate that the claimant can perform some other type of gainful employment. *See Timmerman, supra,* 510 F.2d at 443.

■ We find the testimony of the vocational expert, the only Government witness, to have been improper as not precisely addressing the issue of what available work could have been performed by the claimant in her physical and mental condition as of the last qualifying date. Upon remand, the Government should present proper medical and vocational testimony on claimant's ability to engage in any substantial gainful employment activity. At this time, the claimant may also present additional medical evidence to establish more precisely the exact nature and extent of her medical disability as of June 30, 1976.

---

4. *See* note 1, *supra.*

5. We are troubled by the medical evidence consisting of hospital records of the claimant after June 30, 1976. These records reveal ample evidence to indicate that claimant has had substantial physical, and possibly mental, health problems. The claimant and the ALJ, however, did not focus upon the effect these illnesses may have had upon claimant as of June 30, 1976. The relevancy of this evidence should be determined more precisely on remand. *See, Boyer v. Califano, supra,* 598 F.2d at 1119–20.

## III

The testimony of Dr. Smith, the vocational expert, was also improper due to the assumptions made by the ALJ in his hypothetical questions. When framing hypothetical questions to a vocational expert, the ALJ must comprehensively describe the mental and physical limitations on the claimant's ability to function, in order that the vocational expert be able to assess whether employment exists for a person with such disabilities. *Behnen v. Califano,* 588 F.2d 252, 255 (8th Cir. 1978).

In *Daniels v. Mathews,* 567 F.2d 845, 848 (8th Cir. 1977), we stated that

> [w]e think it fundamental, when the ALJ uses a hypothetical question in examining the vocational expert that the ALJ relate with precision the job capacity and opportunity to the physical and mental impairment of the particular claimant.

Furthermore, the ALJ must consider, in combination, both physical and psychological impairments. *Behnen, supra* at 255; *Dressel v. Califano,* 558 F.2d 504, 508 (8th Cir. 1977). "Evidence as to claimant's impairments must be considered as a whole and cannot be fragmented so as to diminish their combined impact." *Lewis v. Califano,* 574 F.2d 452, 456 (8th Cir. 1978). Only when all claimed impairments are considered by the vocational expert within the scope of a propounded hypothetical can he or she make a proper analysis as to claimant's ability to engage in significant gainful activity.

In this case the ALJ posed hypotheticals to the vocational expert containing the assumption that he would "find from the evidence in this case, that there is no medical impediment to Mrs. Wroblewski performing light work [or, in the alternative, sedentary] activity." The ALJ did not inform the expert of the uncontradicted medical evidence presented by the claimant. While it is not the function of the vocational expert to judge the credibility of medical testimony, *see Johnson v. Califano,* 434 F.Supp. 302, 310 (D.Md.1977), the expert must be given the opportunity to consider all claimed impairments within the scope of the hypotheticals posed to him. *Lewis, supra* at 456.

We conclude that the ALJ has failed to develop a full and fair record and that the cause should be remanded to the Secretary for a further hearing consistent with this opinion.

The judgment is reversed and remanded to the district court with directions to remand the claim to the Secretary of Health, Education and Welfare for a further hearing.