Clarence L. REED, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

No. 79–0398–CV–W–5.

United States District Court, W. D. Missouri, W. D.

Sept. 23, 1980.

Allan L. Bioff, David J. Kornelis, Watson, Ess, Marshall & Enggas, Kansas City, Mo., for plaintiff.

Judith M. Strong, Asst. U. S. Atty., Kansas City, Mo., for defendant.

## ORDER AND MEMORANDUM

SCOTT O. WRIGHT, District Judge.

Plaintiff brought this action under the provisions of 42 U.S.C. § 405(g) seeking judicial review of defendant's final decision denying him social security disability benefits. The defendant has moved the Court for summary judgment, and the plaintiff has filed a brief in support of his claim. For the reasons stated below, the defendant's motion for summary judgment is overruled, and the decision of the defendant to deny the plaintiff social security disability benefits is reversed.

Plaintiff filed an application for disability insurance benefits on October 27, 1977, claiming disability beginning in August, 1977. The applicant received consideration and reconsideration of his claim by the Social Security Administration, and his claim was denied. At plaintiff's request, a hearing was held before Administrative Law Judge Morris H. Kross. The plaintiff, unrepresented by counsel, testified at this hearing, and three friends of plaintiff testified on his behalf. A vocational expert, Dr. Paul T. Correll, also appeared and testified at this hearing. The Administrative Law Judge (ALJ) denied plaintiff's application in a decision dated September 13, 1978. The Appeals Council affirmed the decision of the ALJ, which then became the final decision of the Secretary. The plaintiff seeks judicial review of the Appeals Council's decision.

The form and scope of judicial review of the defendant's actions is statutorily defined and limited. Under 42 U.S.C. § 405(g), the Secretary's decision is conclusive upon the Court if it is supported by substantial evidence. *Alexander v. Weinberger*, 536 F.2d 779 (8th Cir. 1976); *Yawitz v. Weinberger*, 498 F.2d 956, 957 (8th Cir. 1974). This standard of substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Russell v. Secretary of HEW*, 540 F.2d 353, 356 (8th Cir. 1976); *Brinker v. Weinberger*, 522 F.2d 13, 17 (8th Cir. 1975).

The claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. § 423(d)(1). In order to meet the statutory definition, the claimant must show (1) that he has a medically determinable physical or mental impairment that will either last for at least twelve months or result in death, (2) that he is unable to engage in any substantial gainful activity, and (3) that this inability is a result of his impairment. *Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975).

■ Once the claimant establishes that his impairment is so severe that he cannot engage in his former occupation, the burden shifts to the Secretary to prove that the claimant can perform some other kind of substantial gainful employment. *Johnson v. Califano*, 572 F.2d 186, 187 (8th Cir. 1978).

■ After hearing the plaintiff's testimony, the ALJ determined that plaintiff had met his initial burden of demonstrating an impairment that precluded him from returning to his former occupation. However, the ALJ found that claimant was physically capable of performing sedentary jobs and engaging in other substantial gainful employment and, therefore, was not disabled as defined by the Act. This Court concludes that there is not sufficient evidence in the record to show that the plaintiff was capable of performing any kind of substantial gainful employment, and the decision of the Secretary is in error.

Plaintiff was born November 7, 1925. He is a high school graduate. He is 6 feet and ¼ inch tall and weighs about 168 pounds. He has completed no special vocational training other than on–the–job training. He served as a munitions handler in the Marines and in special services in the Army.

Plaintiff worked for Armour Food Company for 18 years in several capacities, including as a cattle shackler, a shipping and receiving clerk, and he separated cattle guts

and weighed spiced meats. He has also worked as a general laborer.

Plaintiff quit work at the end of July 1977 because of his health. In August, 1977, plaintiff was hospitalized at St. Joseph's Hospital, St. Joseph, Missouri, and an arteriogram was performed. He was discharged with the diagnosis, "Obstruction of superficial femoral artery, right."

Plaintiff was again hospitalized at St. Joseph's Hospital in November, 1977, and a right femoral popliteal bypass saphenous graft was performed. His diagnosis at that time was "right superficial femoral obstruction."

Plaintiff was hospitalized again in April, 1978. Another arteriogram was performed, and he was discharged with the diagnosis, "distal narrowing, just distal to the bypass anastomosis."

Plaintiff's treating physician, Dr. Charles R. Willman, describes plaintiff as "a diabetic who has developed peripheral vascular disease." In Dr. Willman's professional medical opinion, plaintiff's progressive peripheral vascular disease has rendered plaintiff "totally disabled for work."

On January 15, 1978, plaintiff was examined by Dr. Kim Dayani. Dr. Dayani diagnosed advanced generalized arteriosclerosis with peripheral vascular insufficiency and diabetes mellitus. In his comments, Dr. Dayani stated that the plaintiff could not perform the type of duties he had performed in the past, nor could he perform any type of work which would require a significant amount of walking or standing.

At the hearing, plaintiff was not represented by counsel. He testified that his legs constantly ache, that his walking and driving are limited to short distances because his legs cramp and swell. He testified that he cannot sit erect with his legs down for more than about 10 minutes at a time. He further testified that the only way he can get relief is to soak his legs in warm water (Tr. 92), or if he lies on his back with his legs elevated (Tr. 92), or if he sits in his recliner chair and elevates his legs above his head (Tr. 116). Three witnesses testified on behalf of plaintiff on the basis of their personal observation, and they corroborated plaintiff's testimony about the pain in his legs and the need to elevate them.

Dr. Paul T. Correll testified at the hearing as the vocational expert. The ALJ asked Dr. Correll to take into consideration plaintiff's age, education, training, work experience, and background, and to assume that plaintiff is capable of engaging in sedentary work activity with no further limitations. Based on that assumption, Dr. Correll testified that plaintiff would be qualified to perform several jobs which exist in significant numbers in the region where plaintiff resides.

The ALJ then asked Dr. Correll to assume that plaintiff could do sedentary work, but that he would have to move about and change position and spend the greater part of the working day with his legs elevated. Dr. Correll inquired as to the amount of elevation that plaintiff would need, and the ALJ hypothesized that plaintiff would need to have his legs elevated to full horizontal. Dr. Correll responded that plaintiff would still be able to perform the sedentary jobs he listed earlier, except that about 25 percent fewer jobs would be available.

The ALJ then asked Dr. Correll to consider plaintiff's employability if he would need to recline with his legs elevated above his waist for significant periods of time. Dr. Correll responded that plaintiff would be unemployable.

In his decision, the ALJ found that the plaintiff was physically capable of performing sedentary work activity, provided that he would be able to move around and change position and elevate his feet as needed during the course of his work activity. Obviously, the ALJ concluded that plaintiff need only elevate his legs in a horizontal position to get relief from the pain and swelling. This decision is not based on substantial evidence. In fact, it is not based on any evidence.

There is absolutely nothing in the record to indicate that plaintiff could sit with his legs elevated in a horizontal position for a sufficient length of time which would allow him to engage in substantial gainful employment. It was not clear from plaintiff's testimony, prior to the vocational expert's testimony, how high his legs had to be elevated. When the vocational expert inquired as to the amount of elevation the plaintiff would need to get relief from the pain, the ALJ supplied his own facts rather than asking the plaintiff. When the claimant is unrepresented by counsel, the ALJ has the duty to fully and fairly develop the evidence. *Thorne v. Califano*, 607 F.2d 218 (8th Cir. 1979); *Landess v. Weinberger*, 490 F.2d 1187 (8th Cir. 1974); *Sellars v. Secretary, Dept. of HEW*, 458 F.2d 984 (8th Cir. 1972). He must develop facts both favorable and unfavorable to the claimant. After the vocational expert testified that the claimant would be unemployable if he had to elevate his legs above waist level, the plaintiff volunteered the fact that his feet must be elevated above his head in order for him to get relief. (Tr. 116.) Instead of pursuing this line of thought further, the ALJ ended the hearing and chose to ignore plaintiff's last remarks. He, therefore, failed in his duty to fully and fairly develop the evidence. There is no need to remand on this issue, though, because after the hearing, the plaintiff submitted an affidavit to the Appeals Council which fully detailed the amount of elevation plaintiff requires for his legs. In order to relieve the pain, the plaintiff's legs must be elevated above waist level. Elevating them in a horizontal position is worse than simply allowing them to hang down. There is simply no evidence in the record which supports the ALJ's finding that claimant could perform work activity with his legs elevated in a horizontal position.

The available medical evidence also fails to support the findings of the ALJ. Plaintiff's treating physician, Dr. Charles R. Willman, stated that plaintiff was "totally disabled for work." An examining physician, Dr. Kim Dayani, recommended that plaintiff not engage in any type of work which requires a significant amount of walking or standing. These two medical opinions are not necessarily in conflict, and even if they could be construed to be in conflict, equal or greater weight should be given to the medical opinion of the treating physician. *Brand v. Secretary, Dept. of HEW*, 623 F.2d 523 (8th Cir. 1980); *Ragsdale v. Secretary, Dept. of HEW*, 623 F.2d 528 (8th Cir. 1980); *Davis v. Califano*, 605 F.2d 1067 (8th Cir. 1979). Plaintiff's treating physician determined that he was totally disabled. This opinion is supported by all other inferences in the record, and it is not contradicted by any other medical evidence. There is no evidence in the record to support the ALJ's finding that the plaintiff could engage in substantial gainful activity.

For the reasons stated above, it is hereby

ORDERED that the decision of the ALJ denying plaintiff benefits is reversed, and this Court finds that plaintiff is entitled to disability insurance benefits under the Social Security Act from and after August 1, 1977. Costs are assessed against defendant.