**Benjamin H. POE, Appellant,**

v.

**Patricia HARRIS, Secretary, Health, Education & Welfare, Appellee.**

No. 80–1398.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 14, 1981.

Decided March 23, 1981.

As Amended April 2, 1981.

---

McMath & Leatherman, P. A., Little Rock, Ark., for appellant.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., George W. Proctor, U. S. Atty., A. Doug Chavis, Asst. U. S. Atty., Little Rock, Ark., Alan M. Grochal, Atty., Dept. of Health and Human Services, Baltimore, Md., for appellee.

Before GIBSON, Senior Circuit Judge, and HEANEY and ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

Benjamin Poe is a forty-four-year-old, four-year Navy veteran with a seventh grade education. He has worked as a plumber, mechanic, heating and air conditioning installer, and truck driver. His nonverbal I.Q. is 75. In May, 1972, while working as a plumber, Poe fell from a ladder and injured his back and side. He missed one week of work and returned to his job. He fell a second time in October, 1974, and again injured his back. He has not returned to work since that time. He applied for and was granted Social Security disability benefits on May 27, 1975, the benefits to begin on October 23, 1974. The disability benefits were terminated by the Secretary of Health, Education and Welfare on April 30, 1978.

Poe objected to the termination and was given the required administrative hearings. The Appeals Council ultimately upheld the Secretary's decision. Poe sought review of the decision in the United States District Court for the Eastern District of Arkansas. That court reviewed the administrative record and granted the Secretary's motion for summary judgment. Poe appeals to this Court. We reverse and remand to the district court with directions.

Several facts are undisputed. Poe had a good work record prior to his first fall. There is no evidence that he was a malingerer. He received an honorable discharge from the Navy with the rank of Seaman First Class. He underwent surgery for his back on September 29, 1975. A large herniated pulposus was removed from the L4–5 level at that time. His back continued to bother him after surgery and by March 10, 1975, he had also developed a nervous or psychological disorder. It is conceded that Poe cannot return to the job that he held on October 23, 1974.

What is in dispute is whether there is some other type of substantial gainful employment that Poe can perform in light of his existing disabilities. The burden of proving that there is rests with the Secretary. *Rhines v. Harris*, 634 F.2d 1076, 1078–1079 (8th Cir. 1980); *Wroblewski v. Califano*, 609 F.2d 908, 912 (8th Cir. 1979).[1] In this regard, it is not enough to show that the claimant can perform some type of work in theory; proof must be based on a realistic evaluation of the claimant's abilities in view of his age, work experience and physical and mental capabilities. *Rhines v. Harris, supra,* 634 F.2d at 1079; *Young v. Califano*, 633 F.2d 469, 472 (6th Cir. 1980); *Brinker v. Weinberger*, 522 F.2d 13, 17–18 (8th Cir. 1975).

In our view, the Secretary failed to apply the foregoing standard in determining whether Poe's disability period ended in April, 1978, and whether he remained able to work through the period covered by this record. The Secretary's decision was based in large measure on the testimony of a vocational expert who regularly testifies for the Secretary in disability proceedings. She testified that she had read the record and had listened to the testimony. She then acknowledged that Poe could not do

---

1. It does not appear from the record that the administrative law judge recognized that the burden of proof shifted to the Secretary.

work that required a lot of bending, walking, standing, pushing, pulling or lifting. She stated that he *had* had good hand, eye and foot coordination during his working years and that there were jobs that were lighter and of a more sedentary nature in the economy, such as packagers or assemblers, that required good manual dexterity. She did not testify unequivocally, however, that Poe still had good eye, hand, and foot coordination or that an individual of Poe's age, his education, his training and his physical and emotional disabilities would be able to perform "light or sedentary work." We thus have no way of knowing whether the vocational expert believed that Poe could realistically perform available light or sedentary work in light of the factors stated above.

There is very little medical testimony in the record to indicate that Poe had retained the skills required to perform the jobs suggested by the vocational expert, *e. g.*, manipulative ability, ability to sit or stand for prolonged periods, or the ability to focus attention on sustained activity. Indeed, the only record evidence is that he could not sit, stand or walk over prolonged periods.

It is also not clear that the administrative law judge considered, in combination, both the physical and psychological impairments of Poe. *See Wroblewski v. Califano, supra,* 609 F.2d at 914; *Behnen v. Califano,* 588 F.2d 252, 255 (8th Cir. 1978); *Dressel v. Califano,* 558 F.2d 504, 508 (8th Cir. 1977).

Poe submitted additional evidence on appeal to this Court in the form of a comprehensive report from Dr. Douglas A. Stevens, which states:

> In summary we are dealing with a man of limited education and deficient mentation who now suffers from a number of perceived physical disabilities along with very severe emotional disabilities. His emotional disabilities are felt to be disabling in and of themselves, but in combination with his physical condition, make the picture even more bleak. I felt that he was disabled when seen in 1977, and his condition has changed little since that time. * * * While his physical problems may well be of significance, it is apparent to me that his emotional disorder at this point is likely to be the more disabling of the two. This is not to say that Mr. Poe does not have the capacity for benefiting from therapeutic intervention, but it would take a massive intervention at this point, involved in full time residential chronic pain management training and psychotherapy in order to have any hope of assisting him to improve to the point that employment could be considered. He simply has no source of funds that would provide him with such intervention. In view of this I think his present condition is likely to remain fairly permanent.

While we cannot consider this evidence in deciding whether the administrative decision was correct, we can examine it to determine whether it constitutes new evidence sufficient to justify remanding the matter to the Secretary for additional findings. *See Johnson v. Harris,* 612 F.2d 993, 998–999 (5th Cir. 1980). We hold that it is sufficient here.[2]

For the foregoing reasons, we remand this matter to the district court with directions to remand to the Secretary. The court shall direct the Secretary to redetermine, in light of proper legal standards and after further hearing, (1) whether benefits

---

**2.** Dr. Stevens' report constitutes "good cause" because it is not merely cumulative of evidence already on file and it notes the existence of a serious ongoing psychosomatic or psychoneurotic impairment which may, along with other evidence properly considered, alter the Secretary's decision. Since Dr. Stevens had examined the claimant before the end of his insured period and has expressly stated that Poe was disabled at that time and continues to be so disabled, no question of the validity of claim-

ant's special earnings requirement should arise. *See Parker v. Harris,* 626 F.2d 225, 232 (2d Cir. 1980). Evidence of an applicant's condition "subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date * * *." *Id.* at 232 (quoting *Gold v. Secretary of Dep't of HEW,* 463 F.2d 38, 41–42 (2d Cir. 1972)).

were properly discontinued on April 30, 1978, and (2) if they were, whether the additional medical evidence submitted subsequent to the Secretary's decision is such that disability benefits should be reinstated at some date subsequent to April 30, 1978.