Jean WYNN, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.

No. 82–0538–CV–W–9.

United States District Court, W.D. Missouri, W.D.

March 3, 1983.

---

618

Jacqueline Guidry, Legal Aid of Missouri, Kansas City, Mo., for plaintiff.

A. Mary Sterling, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## ORDER REMANDING CASE

BARTLETT, District Judge.

Plaintiff seeks review of a final decision disallowing her claim for disability insurance benefits under Title II of the Social Security Act, (the Act), 42 U.S.C. §§ 401 *et seq.,* and also her claim for supplemental security income (SSI) benefits based on disability under Section 1602 of Title XVI of

the Act, 42 U.S.C. §§ 1381–1385. Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Secretary of Health and Human Services under both Titles II and XVI.

Plaintiff filed her application for disability benefits under both Title II and Title XVI on September 5, 1980. Both applications were denied by the Social Security Administration. At plaintiff's request, a hearing was held before an administrative law judge (ALJ). Plaintiff appeared without counsel at this hearing and testified in her own behalf. No other witnesses testified. On December 30, 1981, the ALJ rendered a decision unfavorable to the plaintiff, holding that she was not entitled to a period of disability or to disability insurance benefits under Sections 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i) and 423, or to supplemental security income under Section 1614(a)(3), 42 U.S.C. § 1382c(a)(3), of the Act. Plaintiff sought review of the ALJ's decision, but on April 30, 1982, the Appeals Council of the Social Security Administration denied her request for review. Thus, the opinion of the ALJ stands as the final decision of the Secretary.

Plaintiff alleged in her application for disability that she suffered from blackouts, a heart condition and high blood pressure. (Tr. 53.) At the hearing she complained of being out of breath after walking three blocks.

> I walk ... three blocks. And everyday when, like when I'm walking, I always have to sit down on, lately on the corner. I sit down on the steps. I'm out of breath when I get there and I sit there maybe five or ten minutes before I could start going up the big hill. Then I have to start up the hill. I think that's really my main problem. I stay out of breath and then I get dizzy all the time....

(Tr. 47.)

The ALJ found that the claimant was not under a "disability" as defined in the Act, and that she retained the residual functional capacity to perform her prior work as a vending machine attendant or as an interviewer for a governmental agency.

This action is before the Court on cross-motions for summary judgment. Upon consideration of the briefs in support and in opposition, and for the reasons stated below, this action will be remanded for further proceedings in accordance with this opinion.

The standard of judicial review for this Court is whether the decision of the Secretary was supported by substantial evidence.

> [O]ur duty is to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Also see, Brand v. Secretary of HEW, 623 F.2d 523, 527 (8th Cir.1980). Substantial evidence, in turn, means more than a scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 [91 S.Ct. 1420, 1427, 28 L.Ed.2d 842] (1971). Furthermore, this standard of review is more than a rubber stamp for the Secretary's decision, and is more than a mere search for the existence of substantial evidence supporting the Secretary's decision. Brand, 623 F.2d at 527. As Justice Frankfurter made clear "the substantiality of evidence must take into account whatever the record fairly detracts from its weight." [sic] Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 [71 S.Ct. 456, 464, 95 L.Ed. 456] (1951).

McMillian v. Schweiker, 697 F.2d 215 at 220 (8th Cir.1983).

The burden of proof rests upon the plaintiff to establish that she is entitled to benefits under the Social Security Act. Weber v. Harris, 640 F.2d 176, 177 (8th Cir.1981); Timmerman v. Weinberger, 510 F.2d 439, 443 (8th Cir.1975).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled or not. The regulations, referred to generally as Medical-Vocational Guidelines, are codified as Subpart P of Part 404 of Chapter III of

Title 20 of the Code of Federal Regulations, 20 C.F.R. §§ 404.1501 et seq., and the same guidelines appear in Subpart I of Part 416, 20 C.F.R. §§ 416.901 et seq. (1982). The former regulations apply to claims by workers insured by reason of earnings covered by social security who have become disabled under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. and the latter to claims of disability by persons who meet a prescribed means test and are eligible for supplementary security income (SSI) payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385.

The Eighth Circuit Court of Appeals summarized this evaluation process in *McCoy v. Schweiker,* 683 F.2d 1138 (1982). Although *McCoy* dealt with the claims of insured workers, the Court specifically noted that the discussion about the Medical-Vocational Guidelines was equally applicable to SSI claims.

In an attempt to create an orderly and uniform framework for analysis and decision of disability claims, the Guidelines set out a fixed sequence of decision-making that Administrative Law Judges (ALJs) are required to follow. First, a determination is made whether a disability claimant is currently engaged in substantial gainful activity; if so, he must be found not disabled. If the claimant is not engaged in substantial gainful activity, the next question is whether he is suffering from a severe impairment, defined as one that significantly limits the ability to perform basic work-related functions. If a severe impairment is not found, the claimant must be found not disabled. If there is a severe impairment, and it is one listed in Appendix 1 to Subpart P, the claimant is found disabled on the medical evidence alone. If the impairment is not listed in Appendix 1, the next inquiry is whether the claimant can perform relevant past work. If he can, a finding of no disability is required. Finally, if the claimant cannot perform relevant past work, the question then becomes whether he can nevertheless do other jobs that exist in the national economy, despite his having a severe impairment that prevents return to his previous work. At this stage, the ALJ must determine the claimant's residual functional capacity (RFC), that is, what he can still do physically even with his impairment, and also the claimant's age, education, and relevant work experience—the latter three findings being referred to as vocational factors, as opposed to RFC, which is a medical factor. The criteria of age, education, and work experience are relevant because the statute specifies them in defining disability, 42 U.S.C. § 423(d)(2)(A). If the ALJ's findings as to RFC, age, education and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either "disabled" or "not disabled") directed by the relevant Rule or line of the applicable Table....

*McCoy,* 683 F.2d at 1141–42.

In this case the ALJ determined that the plaintiff had not engaged in any substantial gainful activity since the alleged onset of her disability, September 2, 1980, although she had taken care of children within her home during the period "January through April 1980" [sic]. (Plaintiff's testimony was that she cared for children during the period January through April, 1981. (Tr. 38.)) The record did not establish, however, whether this employment constituted substantial gainful activity. The ALJ made the following additional findings relative to plaintiff's impairments:

The claimant has hypertension which at times has been under poor control due to the claimant's failure to take medication and follow her diet.

The claimant has had early congestive heart failure secondary to her hypertension which is, in turn, secondary to her failure to control her hypertension.

The claimant has intermittent slight dizziness secondary to her hypertension.

The claimant's hypertension is controllable on medication and diet as indicated by her medical records.

The claimant is exogenously obese; although she has been advised to lose weight, the record indicates she has made little attempt to comply with this advise. The claimant has no psychiatric impairment which interferes with her ability to perform basic work-related activities.

The claimant maintains the residual functional capacity to perform her last work as a vending machine attendant or her previous work as an interviewer for a governmental agency.

(Tr. 8.)

The ALJ concluded by finding that plaintiff was not under a disability as that term is defined by the Social Security Act.

Applying the framework of analysis of *McCoy,* the ALJ determined that the plaintiff was not engaged in substantial gainful activity. He also found that she had certain impairments without specifying whether he found them severe. None of her impairments met the criteria of the listings in Appendix 1 to Subpart P. At that point, however, the ALJ concluded that the plaintiff could perform relevant past work and, accordingly, by-passed the balance of the analysis set out in the regulations.

Plaintiff asserts in her motion that the defendant erred in the following respects: (1) Failure to fulfill affirmative duty to assist unrepresented claimant, (2) ignoring substantial evidence regarding claimant's inability to return to her former jobs, (3) applying improper standards to the evaluation of claimant's obesity and hypertension, (4) failing to consider cumulative effects of impairments, and (5) failing to consider relevant vocational factors.

■ In support of her motion the plaintiff has submitted three additional exhibits which consist of: (1) documents entitled "Screening Interview" and "Evaluation Report" from the Jewish Vocational Service; (2) a medical report from the Truman Medical Center dated May 28, 1982; and (3) a letter reporting the results of an examination of plaintiff by Emery R. Calovich, M.D. Although the defendant does not object to the consideration of these exhibits by the Court, the Social Security Act does not provide for such a procedure. *Poe v. Harris,* 644 F.2d 721, 723 (8th Cir.1981); *Parks v. Harris,* 614 F.2d 83, 84 (5th Cir.1980). The Act provides that the district court "shall have power to enter, *upon the pleadings and transcript of the record,* a judgment . . . ." 42 U.S.C.A. § 405(g) (West Supp. 1982) (emphasis added). The standard of review for this Court is, as discussed previously, whether the decision of the Secretary was supported by substantial evidence. Because it is necessary to reverse the decision of the Secretary, this additional evidence should be considered by the Secretary upon remand. This evidence may be helpful in evaluating plaintiff's capacity to perform her prior work as well as in assessing her motivation.

■ As the plaintiff has correctly noted, the ALJ has a duty to "fully and fairly develop the record so that a just determination of disability may be made." *McCoy,* 683 F.2d at 1147; *Landess v. Weinberger,* 490 F.2d 1187, 1189 (8th Cir.1974). This is especially true when the claimant is unrepresented by counsel. *Reed v. Califano,* 498 F.Supp. 68, 71 (W.D.Mo.1980); *Corbin v. Califano,* 481 F.Supp. 699, 703 (W.D.Mo. 1979). The ALJ failed to develop the record in this case.

The ALJ questioned plaintiff about her prior work activities. She testified that she had kept children in her home from January 1, 1981, to April, 1981. She concluded stating "I just couldn't cope with them. It was just too much for me." (Tr. 38.) No inquiry was made by the ALJ whether this pursuit constituted substantial gainful activity or why Ms. Wynn was unable to "cope" with the children. Further, when the ALJ asked Ms. Wynn to describe her former job as a vending machine attendant, he did not inquire in detail what physical demands her job entailed. For example, he did not ascertain the weight of the milk machines which Ms. Wynn testified were "kind of heavy" nor how often she was required to stand on a chair. Plaintiff testified that she was terminated from her

position for failure to call in when she was absent from work. (Tr. 39–40.) However, she also testified she had been sick and "Everytime, like when, I'd stay out of breath all the time and when I walked a long ways I'd black out." (Tr. 44.) Ms. Wynn responded similarly to the ALJ's inquiry of what her principal health problems were that kept her from working. (Tr. 46.) The record is not clear if these complaints occasioned Ms. Wynn's absence from her job. Most significantly, the ALJ did not inquire of Ms. Wynn if she was still able to perform those activities and if not, in what particulars she was unable to perform the duties of her prior position.

Ms. Wynn also indicated that she had previously worked as a teacher's aide. Again, the ALJ had Ms. Wynn give a limited description of her duties in this prior position but failed to ascertain whether she could still perform such duties.

Plaintiff also testified that after losing her position as a vending machine attendant she had called the Board of Education and applied for a position in the Custodian Department. (Tr. 40–41.) Plaintiff's work history indicated that she had previously done some janitorial work in a supervisory capacity but occasionally was required to do custodian work. Again the ALJ failed to inquire about the duties such a position entailed and plaintiff's present ability to perform such duties.

In addition, Ms. Wynn testified that she could no longer "run the sweeper" or wash clothes and that she was no longer active in the church, a girl scout organization and local political club. (Tr. 48.) Again the ALJ did not question Ms. Wynn why she no longer performed these household jobs or participated in her former social and church activities.

■ The record was not developed by the ALJ to determine whether or not the plaintiff could perform her past relevant work. Apparently because Ms. Wynn testified at the hearing that she had applied for a job as a social security claims examiner and stated that she thought that she would be able to do that type of work "if its [sic]

something like the interviewer that I used to work," the ALJ concluded that Ms. Wynn could perform her prior work activity. (Tr. 51.) Ms. Wynn testified that this job had involved interviewing people for the food surplus program, the predecessor of the present food stamp program. (Tr. 42–43.) However, Ms. Wynn last performed her duties as an interviewer in 1966. Under the Secretary's own regulations, work experience done 15 years or more before the date of alleged disability is not generally considered relevant. Both 20 C.F.R. §§ 404.1565(a) and 416.965(a) state in pertinent part:

"Work experience" means skills and abilities you have acquired through work you have done which show the type of work you may be expected to do. Work you have already been able to do shows the kind of work that you may be expected to do. We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity. We do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier) applies. A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply. The 15–year guide is intended to insure that remote work experience is not currently applied. . . .

Thus it was not proper for the ALJ to consider Ms. Wynn's prior work experience as an interviewer in assessing whether she was capable of performing such a job at present.

Therefore, the ALJ's conclusion that the plaintiff is able to perform past relevant work is not supported by substantial evidence. As previously discussed, the ALJ failed to determine whether Ms. Wynn could still perform her prior duties as a vending machine attendant and the record was inadequately developed regarding her other work experience. Further, the ALJ

was not entitled to rely on Ms. Wynn's work experience that was "15 years or more before the time we are deciding whether you are disabled."

In addition, the ALJ failed to properly develop the record and to employ the correct legal standards in evaluating plaintiff's claim of disability. For example, the ALJ determined that plaintiff did not see a doctor frequently and just went in July of 1981 because it was required in order to "get my medicine." (Tr. 45.) The ALJ asked Ms. Wynn what medications she took (Tr. 45–46) but he did not ascertain whether the medications relieved her symptoms or determine if she took the medications regularly. Nevertheless, the ALJ specifically found that plaintiff failed to take her medication, failed to follow her diet for hypertension, and also made "little attempt" to lose weight. (Tr. 8.) This finding was made despite the fact the ALJ failed to question Ms. Wynn about any of these matters at the hearing. There is at least some evidence in the record that Ms. Wynn did not take her medication for hypertension and congestive heart failure for nine months, (Tr. 131, Report from Truman Medical Center dated July 18, 1981). However, plaintiff disputed this in a letter to the Appeals Council (Tr. 5) and the ALJ could make no credibility finding on the question since no testimony was presented to him on this issue.

The plaintiff also testified that a Dr. Terry from the Truman Medical Center advised her to quit her job and apply for social security benefits. (Tr. 44.) The medical file includes a letter dated July 25, 1980, from a Dr. Thomas L. Terry of the Truman Medical Center addressed "To Whom It May Concern." The letter states that Dr. Terry treats Ms. Wynn for her cardiac problems but gives no information on her condition except that she would benefit from an air conditioner. (Tr. 96.) The ALJ told Ms. Wynn at the hearing that he would try to secure other medical reports and the reports of the Truman Medical Center. (Tr. 51.) If Dr. Terry was Ms. Wynn's treating physician, then a report from him should have

been included. The record does not indicate whether the ALJ attempted to obtain a medical report evaluating Ms. Wynn from Dr. Terry. The plaintiff was given no indication that she should attempt to obtain such a report which would be relevant to her case.

As to the effect of plaintiff's obesity on her residual functional capacity, the Eighth Circuit has indicated that the proper question is "whether her obesity is the sole or major cause of her disabilities, and, if so, whether her obesity is reasonably remediable *by her.*" *Stone v. Harris,* 657 F.2d 210, 212 (8th Cir.1981) (emphasis in original). The answer to this inquiry must, of course, be supported by substantial evidence. *Id.*

It is also noted that the ALJ failed to inform plaintiff that other witnesses, besides herself, could testify in support of her claim. Ms. Wynn's testimony about her limitation of activities would presumably have been supported by testimony from her daughter with whom she lived if the daughter had been called to testify.

If it becomes necessary to weigh the credibility of Ms. Wynn or any other witnesses who testify before the ALJ, it must be emphasized that the ALJ is required to decide in the first instance whether to believe the claimant and must make explicit credibility findings. *Andrews v. Schweiker,* 680 F.2d 559, 561 (8th Cir.1982). *Northcutt v. Califano,* 581 F.2d 164 (8th Cir.1978). (For a brief discussion of some of the facts which are relevant in assessing credibility, see *Tyson v. Schweiker,* 543 F.Supp. 894, 895 (W.D.Ark.1982).)

It should also be emphasized that plaintiff's impairments cannot be considered individually. In this case it is not clear from the record that the ALJ considered "in combination, both the physical and psychological impairments" of the plaintiff. *Poe v. Harris,* 644 F.2d at 723. *Landess v. Weingerger,* 490 F.2d 1187, 1190 (8th Cir.1974).

Should the record as developed by the Secretary, indicate that the plaintiff is unable to perform her past relevant work, it will be necessary for the ALJ to continue the sequence of decision-making set out in

the Medical-Vocational Guidelines, Subpart P, Part 404, Chapter III, 20 C.F.R. §§ 404.-1501 et seq. and Subpart I, Part 416, Chapter III, 20 C.F.R. §§ 416.901 et seq. In that regard, it must be emphasized that if plaintiff cannot perform her past relevant work the burden of proof shifts to the Secretary and he must prove that the plaintiff is able to perform other work in the economy. *Nicks v. Schweiker,* 696 F.2d 633 at 636 (8th Cir.1983). The ALJ may be able to utilize the "Grid" or it may be necessary to obtain the testimony of a vocational expert depending upon her residual functional capacity and the existence and severity of any nonexertional impairments she may have.

This case is remanded to the Secretary with directions to redetermine, in light of the proper legal standards and after further hearing, whether plaintiff can perform her past relevant work or, if not, whether she can perform other work in the economy.

IT IS SO ORDERED.