Carl M. LANES, Appellant,

v.

Patricia Roberts HARRIS, Secretary of the Department of Health and Human Services, Appellee.

No. 80–2006.

United States Court of Appeals, Eighth Circuit.

Submitted May 20, 1981.

Decided July 22, 1981.

Black Hills Legal Services, Inc. by Dennis C. Whetzal, Rapid City, S. D., for appellant.

Terry L. Pechota, U. S. Atty., Sioux Falls, S. D., John J. Ulrich, Asst. U. S. Atty. (argued), Jeffrey L. Viken, First Asst. U. S. Atty., Rapid City, S. D., for appellee.

Before HEANEY, BRIGHT and STE-PHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Carl Lanes appeals from an order by the district court[1] granting the Secretary's motion for summary judgment. The district court determined that there existed substantial evidence to support the decision of the administrative law judge (ALJ) which found that Lanes was not under a disability and therefore was not entitled to disability benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. We reverse the judgment in favor of the Secretary and remand for further proceedings.

Lanes' application for disability insurance benefits was filed on October 31, 1978,[2] and alleges that he became disabled on January 8, 1975, due to a lower back injury. His application was denied initially and upon reconsideration. A hearing was held at which Lanes appeared with the aid of counsel. The ALJ considered the case *de novo* and denied the claim for benefits, which became the final decision of the Secretary.

Lanes was born on December 14, 1927, and was 51 years old at the time of the hearing before the ALJ. He had completed the twelfth grade in school and stated that he had no further special training. The record is unclear as to the exact periods of Lanes' past employment, but basically his employment history can be summarized as follows.

From approximately 1961 through 1967 Lanes worked as an audiovisual technician, and then until 1969 or 1970, as an audiovisual coordinator for the Grand Forks, North Dakota, school district. Lanes left this employment to work for Midwest Motor Express as a city driver with freight delivery responsibilities. On January 8, 1975, Lanes stated that he injured his back when attempting to unload a headstone marker from his truck while working for Midwest Motor Express.

Since the time of this accident, Lanes worked off-and-on as a part time service station attendant from November 1975 to July 1978. He stated that he initially worked just to help out when needed, and that the total amount of actual work during this period was only three months. He also worked a short period of time as a water meter maintenance man, but was forced to quit after five weeks because of his impairment. A similar result occurred during two separate attempts, one in 1977 and one in 1978, to work as a janitor in a school.[3]

Immediately after the January 8, 1975, injury, Lanes was unsuccessfully treated by a local chiropractor. In February 1975, he sought diagnosis and treatment for the back problem and was recommended by the doctors to undergo complete bedrest in the University of North Dakota Rehabilitation Hospital. The final diagnosis at this time was summarized as "acute disc syndrome, resolving," with the comment: "From a long term standpoint when reviewing the nature of the patient's work, it is questionable whether or not he will be able to return to the strenuous type of work he has performed in the past."

Lanes' impairment persisted, and he was readmitted to the hospital from April 30, 1975, to May 7, 1975. In this reevaluation the examining physician advised against surgery at that time, and referred Lanes to the Mayo Clinic. Lanes' examination at the Mayo Clinic resulted in the following comment: "We told Mr. Lanes to remain off work for 6 weeks and then assume a non-lifting or non-manual laboring job hoping that his back and leg discomfort would cure itself. We did not feel that a surgical procedure was indicated at the present time."

---

1. The Honorable Andrew W. Bogue, Chief Judge, United States District Court for the District of South Dakota.

2. Under 42 U.S.C. § 423(b) an award of disability payments can be made retroactive only up to twelve months prior to the filing of the application.

3. Lanes' earning records show earnings as follows:

| | | | |
|---|---|---|---|
| 1974 | $13,200.00 | 1977 | $3,000.00 |
| 1975 | $ 1,465.51 | 1978 | — |
| 1976 | $ 3,497.00 | | |

Lanes' earnings in 1978 from his sporadic work is not disclosed in the record.

Lanes was hospitalized for treatment of alcoholism in June 1976, and his back ailment was apparently not the subject of examination and treatment again until 1978. Treatment was at the Veteran's Administration Hospital in Fargo, North Dakota, and was again primarily for alcohol abuse.[4]

In August 1978, Lanes became a resident of the Veteran's Administration Center domiciliary in Hot Springs, South Dakota. He testified this move was necessitated by the fact that his back injury kept him from being gainfully employed or able to keep care of his apartment. Between the time of his move to the domiciliary and the hearing before the ALJ, Lanes was treated often for his back pain, receiving medication which at times provided temporary relief and at times was apparently of no help at all.

At the VA Center domiciliary, Lanes answered a telephone at the office on a regular basis, receiving fifty cents an hour. His job was to answer a single telephone and occasionally take messages. He testified this work bothered his condition at times, although he could take short naps and change chairs. He answered an average of six phone calls per eight-hour shift.

The ALJ found that Lanes' complaint of disabling pain was not credible and that he was capable of performing light and sedentary work that would not involve repetitive bending and stooping. The ALJ further concluded Lanes was "capable of doing past relevant work as an AV Coordinator and water meter maintenance man which do not require repetitive bending and stooping."

A claimant has the burden of establishing the existence of his disability. The burden to be met in establishing disability requires the showing of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months, and which renders the individual unable to engage in any substantial gainful activity. Lanes must establish that he is unable to perform his past occupation due to the medically determinable ailment. *See Rhines v. Harris*, 634 F.2d 1076, 1078 (8th Cir. 1980).

The ALJ's findings must be upheld if there exists substantial evidence on the record as a whole to support them. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. *E. g., Brand v. Secretary of HEW*, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ makes no explanation as to why Lanes' subjective testimony of disabling pain was found not to be credible. The medical examinations in 1978 and 1979 of Lanes' condition were not comprehensive, and the examinations in 1975 did not provide objective medical data establishing that Lanes was not disabled. In fact, many of Lanes' complaints are supported by the medical reports.

Based upon Lanes' testimony of disabling pain, his employment attempts since 1975, and the inconclusive medical data, we question whether substantial evidence exists to support the finding that Lanes can perform light and sedentary work. We do not reach that question, however, because there is insufficient evidence in the record as a whole to support the ALJ's conclusion that Lanes could perform past relevant work, to wit, his prior jobs as AV Coordinator and water meter maintenance man.

The ALJ's finding with regard to the latter job is clearly unsupported by the evidence. First, this job was attempted *after* the alleged disabling injury, and, second, Lanes quit the job after five weeks because of his inability to do "the stooping and the bending and the lifting of the meters and the working at the work bench." Lanes was not able to perform this work; nor did this work satisfy the meaning of past relevant work.

**4.** It is unclear whether Lanes was suffering from alcoholism prior to his injury in January 1975. His uncontroverted testimony was that he began drinking heavily after the injury to ease his pain, and for a period of time was drinking "a fifth" of alcohol per day. He was treated in the VA Center in Fargo in April 1978, was sober for a period, but was drinking again in August 1978. He testified at the June 1979 hearing before the ALJ that he had maintained sobriety for several months prior to the hearing.

The ALJ also found that Lanes could perform his past work as an audiovisual coordinator, a position he held in the late 1960's. However, this job description indicates similar requirements to those of the positions Lanes has unsuccessfully attempted since his alleged period of disability. This job required reaching and bending and substantial standing in working with hand tools to repair audiovisual equipment.

 In examining all of this evidence in the record, we conclude that substantial evidence exists establishing that Lanes cannot perform past relevant work, and that he has therefore satisfied his burden in this regard.

The burden therefore shifts to the Secretary to show by a preponderance of the evidence that there is work in the national economy that Lanes can perform in his disabled condition. *E. g., Camp v. Schweiker*, 643 F.2d 1325, 1332 (8th Cir. 1981); *Warner v. Califano*, 623 F.2d 531, 532 (8th Cir. 1980); *Gilliam v. Califano*, 620 F.2d 691, 693 (8th Cir. 1980).

> In this regard, it is not enough to show that the claimant can perform some type of work in theory; proof must be based on a realistic evaluation of the claimant's abilities in view of his age, work experience and physical and mental capabilities. *Rhines v. Harris, supra*, 634 F.2d at 1079; *Young v. Califano*, 633 F.2d 469, 472 (6th Cir. 1980); *Brinker v. Weinberger*, 522 F.2d 13, 17–18 (8th Cir. 1975).

*Poe v. Harris*, 644 F.2d 721, 722 (8th Cir. 1981).

Here, no such showing has been made. The case must be remanded to the Secretary. In view of the time lapse between first a comprehensive medical examination and the hearing before the ALJ and then between that hearing and this decision, the Secretary should have current medical data supplied and the assistance of a vocational expert to enable a proper decision on this issue to be made. *See, e. g., Warner v. Califano, supra*, 623 F.2d at 532; *Ragsdale v. Secretary of HEW*, 623 F.2d 528, 530 (8th Cir. 1980).[5]

Reversed and remanded.

---

**5.** It is important that the Secretary have comprehensive evidence of a claimant's disability, both physical and psychological. *Poe v. Harris*, 644 F.2d 721, 723 (8th Cir. 1981); *Camp v. Schweiker*, 643 F.2d 1325, 1333 (8th Cir. 1981). The Secretary should evaluate Lanes, taking into consideration the objective medical evidence of his back injury, his pain, and his problems with alcoholism. As this court has stated:

> Most injuries or illnesses produce physiological or functional consequences and depending upon the physical makeup of the person involved, the level of pain experienced may or may not produce a disabling injury. In *Landess v. Weinberger*, 490 F.2d 1187 (8th Cir. 1974), we wrote:

>> These claimants are real people and entitled to have their disabilities measured in terms of their total physiological well-being. Different people react in markedly different ways to similar injuries. A back condition may affect one individual in an inconsequential way, whereas the same condition may severely disable another person who has greater sensitivity to pain or whose physical condition, due to age, obesity, deformity, or general physical well-being is generally deteriorated.

> *Cole v. Harris*, 641 F.2d 613, 615–16 (8th Cir. 1981) (quoting *Brand v. Secretary of HEW*, 623 F.2d 523, 526–27 (8th Cir. 1980)).