**Bealy Hugh MILTON, Appellant,**

v.

**Richard SCHWEIKER, Secretary of Health and Human Services, Appellee.**

No. 81–1776.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 19, 1982.

Decided Jan. 22, 1982.

Bealy Hugh Milton, pro se.

Thomas E. Dittmeier, U. S. Atty., Wesley D. Wedemeyer, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before HEANEY, HENLEY and McMILLIAN, Circuit Judges.

PER CURIAM.

Appellant Hugh Milton appeals *pro se* from the judgment of the district court granting the motion of the Secretary of Health and Human Services (the Secretary) for summary judgment on his petition for review of a final decision of the Secretary denying him disability benefits. For the reasons discussed below, we reverse and remand for further administrative proceedings.

At the time of the administrative hearing appellant was fifty-eight years old and had an eighth grade education. He had worked for twenty-five years as an industrial and commercial carpenter and millwright, jobs which required constant walking and stand-

ing, frequent bending, lifting of heavy objects, and climbing of multistoried buildings. On May 10, 1979, appellant applied for disability insurance benefits, alleging that he became unable to work in July of 1973 because of a heart condition and an injured right leg. He twice amended the date of onset of his alleged disability, first to December 31, 1972, and later to June 1, 1971. Appellant last met his insured status on December 31, 1972, and he must therefore establish the existence of a disability on or before that date. *See Thorne v. Califano*, 607 F.2d 218, 219 n.1 (8th Cir. 1979).[1]

In 1963 appellant suffered a work-related injury to his right leg, for which he received a temporary worker's compensation award. Appellant testified that since the injury he experiences pain and swelling of the leg that is exacerbated by periods of prolonged walking or standing. Appellant had stopped medical treatment for his leg in 1966 because, according to his testimony, the doctors could do no more for him. The only relief he obtains is from rest and elevation of the leg. Appellant submitted medical reports from doctors who treated him from 1963 until 1966; the reports generally corroborate his testimony of pain and swelling. In a July 1966 report Dr. Harold Walters estimated that appellant had a "60% permanent partial disability at the level of the right knee joint." This estimation was based upon appellant's subjective complaints, the objective evidence of swelling, and Dr. Walters' review of various doctor and medical reports that demonstrated appellant had irreversible chronic lymphatic obstruction.

Appellant did not return to work for two years following the leg injury. He, however, returned to construction work for periods of time from 1966 until 1968 and in 1971 and 1973. Appellant's earnings record reveals wages of $11,670.44 in 1968, $2,217.28 in 1969, $1,682.01 in 1971, and by his estimate approximately $4,700 in 1973,

1. In August of 1979, appellant suffered a heart attack. Because the attack occurred far beyond the date on which appellant meets his insured status and there is no evidence of a disabling heart condition during the relevant time period, the heart attack cannot serve as a basis for recovering disability benefits.

although only wages of $1,539.14 are posted to his record. Appellant testified he was often forced to leave a job after a short period of time because of the pain and swelling in his leg.

■ In denying benefits, the administrative law judge (ALJ) found that appellant could return to his former job or "lighter construction work." The ALJ relied in part on appellant's earnings during his alleged period of disability. It is true, as the Secretary contends, that wages earned during an alleged period of disability can be evidence of ability to perform substantial gainful employment. *Beasley v. Califano*, 608 F.2d 1162, 1166 (8th Cir. 1979). However, in the recent case of *Lanes v. Harris*, 656 F.2d 285 (8th Cir. 1981), this court held that a claimant's unsuccessful attempt to return to his former work, coupled with his testimony of disabling pain and inconclusive medical reports, satisfied claimant's burden of proof of an inability to perform past customary work. *Id.* at 287.

■ The social security regulations create a presumption that earnings in excess of specified amounts can be evidence of ability to perform substantial gainful activity, but wages earned as a result of short periods of employment by individuals forced to quit because of impairments are exempted. 20 C.F.R. § 404.1574 (1981).[2] The regulations, however, create only a presumption, and they do not relieve an ALJ of the duty to develop the record fully and fairly. *Coulter v. Weinberger*, 527 F.2d 224, 229 (3d Cir. 1975). In the present case the ALJ did not evaluate appellant's earnings against the guidelines; nor did the ALJ adequately question appellant, obtain employment records, or make other inquiry to ascertain the job requirements, the adequacy of appellant's performance, and his reason or reasons for terminating the jobs he held during the alleged period of disability.

■ The ALJ also relied on "the total lack of evidence to establish claimant's condition for the period 1970 to 1979." An ALJ's duty to develop the record includes gathering evidence so that a just determination of disability may be made. *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1974). Here, the ALJ ignored references in appellant's testimony and a medical report to the existence of additional medical records relevant to appellant's condition during the time he met his insured status.

■ In his disability application appellant stated that he had been hospitalized in 1969 at Jewish Hospital in St. Louis for tests which "confirmed that [the] lymph system [of his leg] was destroyed." Dr. Walters' report expressly refers to several doctors' tests and treatments that formed the basis of his diagnosis of irreversible chronic lymphatic obstruction of appellant's right leg. On remand, the Secretary must attempt to secure these records in order to be able to adequately assess the degree of impairment caused by appellant's right leg.

The ALJ also ignored references in medical reports that appellant had a back impairment that resulted in a 1969 laminectomy. In his request for review of the ALJ's decision, appellant pointed out this omission to the Appeals Council and provided the Council with a billing statement from Dr. Francis Walker, a neurosurgeon, who performed a cervical myelogram and laminectomy in January of 1969. The Appeals Council compounded the ALJ's error by

---

2. In relevant part, the earnings guidelines provide that earnings averaging more than $200 per month in calendar years prior to 1976 can be evidence of ability to perform substantial gainful activity, 20 C.F.R. at § 404.1574(b)(2)(i) (1981), but that earnings averaging less than $130 per month in years prior to 1976 can be evidence of an inability to perform substantial gainful employment. *Id.* § 404.1574(b)(3)(i).

In the recent case of *Martin v. Harris*, 666 F.2d 1153 (8th Cir. 1981), the court recognized that the regulations provide that part-time work can also be evidence of ability to perform substantial gainful employment. 20 C.F.R. § 404.1572 (1981). The court, however, noted that the Fourth and Fifth Circuits apparently have found the regulation invalid. At 1155; *Tucker v. Schweiker*, 650 F.2d 62, 63–64 (5th Cir. 1981); *Johnson v. Harris*, 612 F.2d 993, 998 (5th Cir. 1980); *Cornett v. Califano*, 590 F.2d 91, 94 (4th Cir. 1978). In *Martin*, the court was not presented with the issue of the validity of the regulation, but remanded so that the Secretary could demonstrate by vocational evidence the availability of part-time work for the particular claimant.

failing to obtain these records. *See Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980) (Appeals Council's failure to evaluate evidence submitted to it constituted reversible error). On remand, the Secretary should secure and evaluate the records concerning appellant's laminectomy and back impairment.

The Secretary must then develop the evidence as to how appellant's impairments,[3] singly and in combination, affected his ability to return to his former work and to perform other work-related tasks. In addition, the Secretary must give consideration to appellant's allegations of pain, even if they are not fully corroborated by the medical evidence. *Brand v. Secretary of HEW*, 623 F.2d 523, 525–27 (8th Cir. 1980).

Accordingly, the judgment is reversed and remanded to the district court with directions to remand the claim to the Secretary for further administrative proceedings.[4]

3. There is also record evidence that appellant had gall bladder surgery in 1966. Appellant maintains the residual effects of the surgery impaired his ability to lift. The Secretary should also obtain these records and develop the evidence.

4. After development of the medical and vocational evidence, if the Secretary determines that appellant is unable to return to his former job, the burden then shifts to the Secretary to demonstrate by vocational expert testimony or other evidence the existence of alternative jobs that appellant can perform in light of his impairments and skills. *Martin v. Harris, supra*, at 1155 (cases cited therein).

In *Martin*, the court emphasized that "the underlying basis for the vocational expert's opinion evidence must be revealed and must comport with the record." *Id.* at 1155 n.1.