**Laureta SIMMONDS, Appellant,**

v.

**Margaret HECKLER, Secretary of Health and Human Services of the United States of America.**

**No. 86–1339.**

United States Court of Appeals, Third Circuit.

Argued Nov. 18, 1986.

Decided Dec. 16, 1986.

Daniel J. McCarthy (argued), Marks, Feiner & Fridkin, Philadelphia, Pa., for appellant.

Dorothea Lundelius (argued), Ellyn Schwartz, DHHS/OGC/ORA/Region III, Linda L. Shafer, Asst. U.S. Atty., U.S. Atty's Office, Philadelphia, Pa., for appellee.

Before SEITZ, GIBBONS, and HUNTER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Appellant Laureta Simmonds appeals from the April 5, 1986 order of the district court denying her motion for summary judgment and granting summary judgment in favor of the Secretary of Health and Human Services. We have jurisdiction under 28 U.S.C. § 1291 (1982).

### I.

Simmonds is a high school graduate and has been a licensed practical nurse since 1974. Simmonds has no other vocational training. Except for time off to care for her sick father and to attend school, she has been regularly employed since 1966. Simmonds has worked as a part-time waitress, as an assistant manager in a restaurant, and as a licensed practical nurse. Most recently, Simmonds worked at Abington Hospital as a licensed practical nurse from 1975 until March 2, 1981, the date of her injury.

While on duty at Abington Hospital, Simmonds injured her back by lifting a very heavy bag of laundry and placing it in a

laundry chute. She immediately stopped working and received Worker's Compensation through October 1981. Dr. Chollak, an orthopedic surgeon, diagnosed Simmonds as suffering from L–5 radioculopathy (disease of the nerve roots) and two herniated discs. On December 7, 1981, Simmonds was hospitalized for corrective surgery. Dr. Chollak removed one disc and performed a spinal fusion. Upon her discharge, Simmonds was confined to bedrest for three months.

Simmonds applied for disability benefits on January 20, 1982. At that time, she was forty-five years old. The Secretary denied her application both initially and on reconsideration. Simmonds then requested and received a hearing before an Administrative Law Judge (ALJ).

Simmonds testified on her own behalf before the ALJ. She stated that she could not lift more than ten pounds; that she was unable to walk the span of two houses without pain; that she rarely socialized or had visitors; that she could not sit for longer than ten or fifteen minutes at a time; and that she was mentally depressed, frustrated and suicidal.

The evidence before the ALJ detailed Simmonds' medical and emotional history since the accident. Reports indicate that Simmonds received immediate treatment for the injury. Although her condition slowly improved, Dr. Twardy reported that Simmonds continued to have decreased range of motion and tenderness. On March 30, 1981, Dr. Twardy reported that although Simmonds was experiencing less sharp back pain, she did complain of a lower back ache. Her strength was normal and her reflexes and leg raises showed some improvement. On May 4, 1981, Dr. Twardy reported that Simmonds was experiencing a burning sensation in her legs. Simmonds told Dr. Twardy that she was comfortable only when lying in the fetal position.

In his October 28, 1981 letter, Dr. Chollak reported that Simmonds was unable to work. When Simmonds was discharged from the hospital on January 9, 1982, Dr.

Chollak reported a fair prognosis. On February 28, 1982, Dr. Chollak indicated that Simmonds had been unable to do any type of work, sedentary or otherwise, since her accident because of her severe pain and symptomatology. In June 1982, Dr. Chollak wrote that Simmonds continued to have some improvement. In August 1982, the doctor noted that Simmonds continued to experience pain and that she could sit or stand for only a few hours at a time. On January 3, 1983, Dr. Chollak expressed his opinion that Simmonds was, at that time, totally disabled. He indicated that Simmonds suffered severe pain with any increased ambulation, that the pain prevented her from doing her back exercises, and that she could sit or stand for only a few hours at a time.

In his February 4, 1982 report, Dr. Matteucci, an internist, recited that Simmonds was taking Tylenol for her pain. On October 5, 1982, Dr. Matteucci indicated that when he first saw Simmonds in August 1981, she was in great pain and could not sit comfortably. However, this report indicates that, as of October 1982, Dr. Matteucci noted continued improvement of Simmond's condition. Dr. Matteucci reported on December 22, 1982 that Simmonds had had continuing leg and back pain since the accident and that he believed she had been totally disabled since the injury. He also indicated that the surgery succeeded in partially alleviating the pain, but that Simmonds was still experiencing some discomfort sitting, lying and walking. He stated his opinion that Simmonds was unable to return to her occupation as a licensed practical nurse. Finally, Dr. Matteucci reported that the economic and physical consequences of the accident had produced a degree of emotional instability and an aggravation of Simmonds' colitis.

In his report of January 3, 1983, Dr. Medway reported the results of electro-diagnostic studies. Dr. Medway indicated that Simmonds' condition had improved significantly since November 3, 1981, and that there was no sign of any increased neural irritability.

In his letter of January 19, 1983, Dr. Sperling, a clinical psychologist, reported Simmonds' complaints of pain. He noted that she seemed comfortable sitting for only a few minutes at a time. He further stated that he could only assume, from what Simmonds had relayed to him, that Simmonds had been totally disabled since her initial injury. He expressed the opinion that while work might be psychologically beneficial to Simmonds, she was probably unable to function in a work environment since she was unable to concentrate or focus on anything other than her current life situation.

Finally, in a letter dated March 15, 1983, Dr. Donner, a psychiatrist, described Simmonds as a "sad looking woman," and diagnosed her as suffering from severe, chronic dysthymic disorder.

On May 5, 1983, the ALJ ruled that Simmonds was not disabled. The ALJ found that Simmonds had three medically determinable impairments: status post lumbar laminectomy and fusion, L–5 radiculopathy, and dysthymic disorder. He credited Simmonds complaints of pain to the extent that Simmonds could work only at a sedentary exertional level. The ALJ found no objective medical evidence of pain since he felt the medical reports essentially repeated appellant's own complaints. Finally, the ALJ found that Simmonds had no nonexertional impairment which would significantly affect her residual functional capacity for sedentary work.

This ruling became the final decision of the Secretary when it was affirmed by the Appeals Council on July 29, 1983. Simmonds brought this action in federal district court to review the Secretary's decision. The district court denied her motion for summary judgment and granted the Secretary's motion for summary judgment. This appeal followed.

## II.

On this appeal, Simmonds challenges the ALJ's findings as to her pain and dysthymic disorder. She contends that the ALJ's finding of no nonexertional impairment is not supported by substantial evidence. Our review of agency factual findings is limited to determining whether those findings are supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Id. at 401, 91 S.Ct. at 1427, quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); see also Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir.1979).

## A. Pain

The ALJ determined that Simmonds' assertions of pain and the medical reports supporting these assertions did not dictate a finding of total disability. He found that the pain did not diminish Simmonds' residual functional capacity. The ALJ relied on the most recent electrodiagnostic studies showing only mild L–5 radiculopathy and the absence of any objective neurological evidence of pain so severe as to preclude sedentary work. The record includes evidence supporting the ALJ's conclusion, namely:

a. Dr. Twardy's report of March 30, 1981, in which he noted "the patient reports that she no longer has the sharp back pain." App. 145A.

b. Dr. Matteucci's report of February 4, 1982, indicating that Simmonds was taking nothing for pain except Tylenol. App. 160A.

c. Dr. Chollak's letter of August 12, 1982 stating "she continues having pain in her back and, at this point, is not able to stand or sit for more than three or four hours, at most." App. 164A.

d. Dr. Matteucci's correspondence of October 5, 1982 reporting "she is still having some residual pain in the back and thigh but with steady improvement." App. 165A.

e. Dr. Chollak's letter of January 3, 1983 again indicating that Simmonds

could sit for a few hours at a time. App. 178A.

f. The report of January 3, 1983 summarizing the results of certain tests performed on Simmonds. The report indicates that the L–5 radioculopathy was mild. It also shows that Simmonds' condition was significantly improved and that she no longer had any neural irritability on the right side and that there was no evidence of denervation. App. 183A.

■ While there is other evidence in the record that could support a finding of disability based on pain, our inquiry is not whether the ALJ could have reasonably made a different finding based on this record. Rather, we must review whether the ALJ's actual findings are supported by substantial record evidence. We conclude that the ALJ's finding on the pain issue is supported by substantial evidence.

Simmonds also argues that the ALJ gave inadequate weight to her subjective complaints of pain. Where, as here, a claimant testifies that she suffers from pain and this testimony is corroborated by medical reports, the ALJ is required to give the subjective allegations "great weight." *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *see Ferguson v. Schweiker*, 765 F.2d 31 (3d Cir.1985).

■ Although the ALJ thought the medical reports did no more than repeat Simmonds own subjective complaints of pain, he credited those complaints "to the extent that she would be limited to work on a sedentary exertional level." This finding amounts to a complete acceptance of Simmonds' complaints as precluding any work above a sedentary level. Since the ALJ gave Simmonds' complaints essentially conclusive effect to this significant extent, we cannot say he failed to accord these assertions appropriate weight.

## B. Dysthymic Disorder

■ The ALJ found that Simmonds suffered from the medically determinable condition known as a dysthymic disorder. A dysthymic disorder is essentially a chronic mood disturbance involving either a depressed state or a loss of interest or pleasure in almost all usual activities. *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders*, 220–221 (3d ed. 1980). The ALJ, however, rejected Simmonds claim that this disorder impaired her ability to function in a work setting at even a sedentary level. The extent to which Simmonds' dysthymic disorder would affect her residual functional capacity seems to us to be a question of the severity of the depressive state. We believe the administrative record is not sufficiently developed on this issue since it includes only Simmonds' claims of depression and Dr. Donner's diagnosis of "dysthymic disorder, severe, chronic." On this record, we cannot say the ALJ's conclusion that the dysthymic disorder did not amount to a nonexertional impairment is supported by substantial evidence. We will, therefore, remand for further development of this issue. •

■ On remand, the record should also be developed as to Simmonds' claim that she suffers from colitis since it is not clear whether the ALJ considered these allegations.

Once the record is clarified, the Secretary must, of course, reconsider whether the dysthymic disorder in combination with Simmonds' other problems (back condition, pain and colitis) requires a finding of total disability. *See Burnam v. Schweiker*, 682 F.2d 456 (3d Cir.1982).

## C. Vocational Expert

Simmonds finally argues that the ALJ erred in relying on the grids to determine her disability status rather than calling a vocational expert to testify as to specific jobs in the national economy that Simmonds could perform in her present condition. In response, we point out that the ALJ applied the grids to determine Simmonds' disability status based on her exertional impairments only. He went on to consider whether Simmonds had any nonexertional impairment which would affect her

residual functional capacity for sedentary work. Concluding that there was no such nonexertional impairment, the ALJ made his finding of no disability.

Since we believe the record is insufficiently developed to fully support the ALJ's rejection of Simmonds' alleged non-exertional impairment, we are remanding the case for development of this issue. We thus find it unnecessary to reach the question of whether the ALJ violated our case law barring reliance on the grids where there are both exertional and nonexertional impairments in issue, *see Green v. Schweiker*, 749 F.2d 1066, 1072 (3d Cir. 1984), since it appears that the ALJ, in rejecting Simmonds' alleged nonexertional impairments, viewed this case as one involving exertional impairments only.

### III.

For the foregoing reasons, the order of the district court will be vacated with a direction that the cause be remanded to the Secretary for further proceedings in accordance with this opinion.