**John A. SNYDER, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. No. 85–0845.**

United States District Court, M.D. Pennsylvania.

June 17, 1988.

---

Jack I. Kaufman, Allentown, Pa., for plaintiff.

James J. West, U.S. Atty., Harrisburg, for defendant.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Currently before the court is a Report from Magistrate J. Andrew Smyser dated February 9, 1988 which recommends that defendant's motion for summary judgment be denied, and that this case be remanded to the Secretary. *See* document 22 of record. For the reasons that follow, the court will not adopt the Magistrate's Report and will grant summary judgment in favor of defendant.

## BACKGROUND

Plaintiff filed his current application for disability benefits on November 16, 1982.[1] In his application, he states that he became disabled in "1970" as a result of a back injury and internal injuries from an industrial accident in the "1960's." *See* document 7 of record, at p. 159. Plaintiff's application was denied initially and upon reconsideration, and he then sought a hearing before an Administrative Law Judge (ALJ).

On October 30, 1984, an ALJ issued a decision concluding that plaintiff had not been disabled prior to June 30, 1977, the date on which he last met the special earnings requirements of the Act. *See id.* at pp. 24–31. The Appeals Council subsequently denied plaintiff's request for a re-

view of the ALJ's decision. *See id.* at pp. 5–6.

Plaintiff filed the instant civil action on June 21, 1985 seeking review of the Secretary's decision denying benefits. *See* document 1 of record. Plaintiff submitted his motion for summary judgment on November 19, 1985, arguing that the Secretary's position was not supported by substantial evidence. He also argued that he might fall within the revised listing of impairments for psychiatric problems because of "very severe mental problems." *See* document 8 of record, at p. 13 and Attachments.[2] In response to plaintiff's motion for summary judgment, the Secretary argued that the case should be remanded to "readjudicate Plaintiff's claim in light of the new mental impairment criteria...." *See* document 11 of record. Plaintiff did not oppose the motion to remand, and so the Magistrate recommended that the motion be granted. *See* document 12 of record. No exceptions were filed to the Magistrate's recommendation, and so the court remanded the matter to the Secretary for further consideration. *See* document 14 of record.

At a subsequent supplemental hearing held before the ALJ, plaintiff's attorney stated as follows:

The reason this case was remanded, after I filed my complaint to the District Court, and we didn't base our complaint —we submitted motions for summary judgment and submitted a very extensive brief, a voluminous brief as a matter of fact in this case. There was mention made during the course of his testimony originally about a matter of depression and that was not the basis on which he was asking for disability on the basis of his depression. He was alleging that he

---

**1.** Plaintiff first filed for disability benefits on May 27, 1970, alleging that he had become disabled on March 15, 1970. That application was denied on November 17, 1970, and, following a request for reconsideration, again on August 31, 1971. No further administrative appeals were taken. On April 25, 1973, plaintiff again sought disability benefits, claiming that he became disabled on March 15, 1970 by reason of a herniated spinal disc. That application was denied by

notice dated October 24, 1973, and no further appeals were taken. Plaintiff submitted his third application on June 19, 1974, claiming that his disability began in July of 1972. That application was denied by notice dated August 14, 1974, and no further appeals were taken. *See* document 15 of record, at pp. 309–310.

**2.** *See infra* at pp. 16–17.

had a lot of problems of an orthopedic nature. He had a problem of a stomach nature and just generally his whole system seemed to be going awry. For some reason or other somebody in the U.S. District Court, the magistrate who received this case in U.S. District Court decided that since the word depression was mentioned somewhere along the line in the hearing that we had originally in front of you, that this case now ought to be re-heard and remanded because of the new mental impairments. I'm going to repeat to you again today that our case is not based on any mental impairment. Any mental impairments he may have, you know, is just the result of all the pain that he's with constantly. Now, that does cause some depression but he's not ready to be put away and I don't think he's a schizo and we're not making any of those allegations. We're talking about pain, pain, pain. And that's the basis of our whole case.

*See* document 15 of record, at p. 348. Plaintiff's attorney then agreed that there was no evidence that plaintiff had any mental or emotional impairment prior to June 30, 1977, and that there was "nothing to apply the new evaluation standards to." *See id.* at pp. 357–358. The ALJ then called a board certified psychiatrist, who testified that, based on the evidence of record, he could not determine whether plaintiff had any depression as of, or prior to, June 30, 1977. *See id.* at pp. 363–365. The ALJ then concluded the supplemental hearing.

On March 12, 1987, the ALJ issued a recommended decision in which he made, *inter alia*, the following findings:

2. The claimant met the special earnings requirements of the Act, for purposes of entitlement to a period of disability and disability insurance benefits as of "1970," and he continued to meet them through June 30, 1977.

3. The claimant engaged in sustained substantial gainful activity during the 15 month period between April, 1971 and June, 1972. He again engaged in sustained substantial gainful activity for more than 6 months in 1979.

4. The claimant has failed to establish that he became disabled as of, or prior to, June 30, 1977, and continued to be disabled through the effective date of his current application of November 16, 1982.

\* \* \* \* \* \*

6. The claimant's medically determinable impairments, as of June 30, 1977, were: Mild arthritis of the spine, and a Hiatal hernia.

\* \* \* \* \* \*

8. As of June 30, 1977, the claimant had no medically determinable impairment that imposed any non-exertional restrictions or limitations on the claimant's ability to function.

9. As of, and prior to, June 30, 1977, the claimant had no medically determinable impairment, or combination of impairments, the severity of which either singly or in combination met or equalled any of those contained in the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4.

\* \* \* \* \* \*

11. At all times through June 30, 77, the claimant retained the functional capacity for the full range of light work.

12. In assessing the claimant's residual functional capacity, the issue of pain has been fully considered, and it is found that it is because of pain and discomfort that the claimant was limited to the full range of light work through June 30, 1977, however his pain and discomfort was not of such severity and duration as to limit or restrict him to less than the full range of light work.

13. At all times through June 30, 1977, the claimant was a younger individual with a limited education.

14. Pursuant to Section 404.1520(f), and Rules 202.16–202.19 of Appendix 2, Subpart P, Regulations No. 4, the claimant was not "disabled," as defined in the Social Security Act, at any time through June 30, 1977, without

regard to his prior work history and experience.

15. Even if the claimant were limited to no more than the full range of sedentary work as of June 30, 1977, nevertheless pursuant to Section 404.1520(f), and Rules 201.23–201.26 of Appendix 2, Subpart P, Regulations No. 4, the claimant was not "disabled," as defined in the Social Security Act, at any time prior to June 30, 1977, without regard to his prior work history and experience.

*See id.* at pp. 319–321. The Appeals Council accepted the ALJ's recommended decision and denied plaintiff's application for benefits on June 6, 1987. *See id.* at pp. 298–299.

Plaintiff filed a supplemental motion for summary judgment with a supporting brief on December 15, 1987, and defendant filed his brief in support of his summary judgment motion on January 14, 1988. *See* documents 19, 20, and 21, respectively. By Report dated February 9, 1988, Magistrate Smyser recommended that both motions for summary judgment be denied and that this case again be remanded to the Secretary. *See* document 22 of record. In reaching his conclusion, the Magistrate stated as follows:

The medical evidence is not determinative when viewed in the framework of the question whether the plaintiff had the residual functional capacity to perform at least sedentary work before June 30, 1977.

The plaintiff's claim was not decided primarily on the basis of the medical evidence, but was decided primarily on the basis of the finding by the ALJ of post-eligibility substantial gainful activity. The ALJ applied the regulatory criteria in 20 CFR § 404.1574(b)(2)(v), finding that the plaintiff had performed substantial gainful activity in 1979. 20 CFR § 404.1574 does not set forth an absolute rule, and on its face it permits the factfinder to draw exceptions to the rule.

*See* document 22 of record, at p. 8. Both parties filed objections to the Magistrate's Report. *See* documents 23 and 24 of record. This matter is now ripe for disposition.

## DISCUSSION

▮ This law is clear that the decision of the Secretary must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence has been defined as "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981), *reh'g denied*, 650 F.2d 481 (3d Cir.1981). Further, "[i]n prosecuting a disability claim, the claimant's initial burden is to demonstrate the existence of a medically determinable disability which precludes resumption of previous employment." *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir.1986). The burden then shifts to the Secretary to show that there is other employment the applicant is capable of performing. *Green v. Schwieker*, 749 F.2d 1066 (3d Cir.1984).

▮ "Under the law of this circuit, the Secretary must give serious consideration to a claimant's subjective assertions of pain, even where those assertions are not fully confirmed by objective medical evidence." *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986). Subjective pain "may support a claim for disability benefits," *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971), and "may be disabling." *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981). "[W]hile there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green v. Schweiker, supra*, 749 F.2d at 1071. Where a claimant's subjective allegations of pain are corroborated by medical evidence, the ALJ is required to give them "great weight." *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir.1986). If a claimant's testimony as to pain is reasonably supported by the medical evidence, the ALJ may not discount the allegations of pain without citing "contrary medical evidence." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985). Finally, when there is evidence

in the record that could support a finding of disability based on pain, the court should review an ALJ's finding of non-disability solely to inquire whether it is supported by substantial evidence, not to determine whether the ALJ could have reasonably made a different finding based on the record. *Simmonds v. Heckler, supra,* 765 F.2d at 58.

Finally, the opinion of a non-examining physician may corroborate the reports of examining physicians and may form part of the substantial evidence defeating contrary opinions. *Richardson v. Perales, supra; Evosevich v. Consolidation Coal Co.,* 789 F.2d 1021 (3d Cir.1986). It is well settled that the Secretary is charged with responsibility for choosing among conflicting medical opinions in determining whether an individual is disabled. *Richardson v. Perales, supra;* 20 C.F.R. § 404.1526. The Secretary may properly accept some parts of medical evidence and reject other parts, provided the Secretary considers all of the evidence and shows some basis for discounting the rejected evidence. *Stewart v. Secretary of H.E.W.,* 714 F.2d 287, 290 (3d Cir.1983); *Cotter v. Harris, supra,* 745 F.2d at 705.

After carefully reviewing the entire record in this case, the court finds the Secretary's decision to be supported by substantial evidence. Preliminarily, the court must consider plaintiff's work activity in 1979. Plaintiff's earning record shows that he earned $3,789.00 in 1979. *See* document 7 of record, at p. 197. Plaintiff twice testified that he earned this money cutting grass in a cemetery at an hourly wage of $3.50. He was not able to remember how long he had worked. Assuming a forty (40) hour work week, however, plaintiff normally would have worked approximately 27 weeks in 1979.

According to 20 C.F.R. § 404.1574(b)(2)(v), earnings from work activities in 1979 indicate substantial gainful activity if they averaged more than $280 a month. Social Security Ruling 84–25 provides that "[substantial gainful activity (SGA)]-level work lasting more than 6 months cannot be [an unsuccessful work attempt] regardless of why it ended or was reduced to the non-SGA level." The construction given by the Secretary is entitled to substantial deference, *see United States v. Rutherford,* 442 U.S. 544, 553, 99 S.Ct. 2470, 2476, 61 L.Ed.2d 68 (1979) ("the construction of a statute by those charged with its administration is entitled to substantial deference"), and the court sees no reason to question that construction in this case. Thus, since plaintiff worked more than six months at substantial gainful activity-level work in 1979, almost two years after his date last insured, his efforts may not be viewed as an unsuccessful work attempt and he cannot establish that he became disabled prior to June 30, 1977 and continued to be disabled through November 16, 1982, the effective date of his current application.

As mentioned previously, Magistrate Smyser concluded that the ALJ did not recognize that section 404.1574 does not state an absolute rule and that it permits the factfinder to consider such exceptions as that the return to work was an unsuccessful work effort. *See* document 22 of record, at p. 9. In reaching this conclusion, the Magistrate did not consider SSR 84–25, since defendant first mentioned this Ruling in his objections to the Magistrate's Report. *See* document 24 of record, at pp. 3–4. In any event, although the ALJ believed that the claimant could not establish that he became disabled prior to June 30, 1977 because of his work activities in 1979, he went on to "evaluate the evidence of record to determine whether the claimant has established by a preponderance of the credible evidence that he became disabled prior to June 30, 1977." *See* document 15 of record, at p. 315. The ALJ then undertook an extensive evaluation of all the evidence of record, medical and otherwise, *see id.* at pp. 315–319, and concluded that plaintiff retained the residual functional capacity to perform at least a full range of sedentary work. While the ALJ continued to rely on plaintiff's work experience in 1979 to evaluate the conclusions of Dr. Dizon and plaintiff's residual functional capacity,

that factor alone was not found to be dispositive.

At all times through June 30, 1977, plaintiff was a younger individual with a limited education. *See* 20 C.F.R. foll. § 404.1599, Appendix 2, §§ 201.00 and Table No. 1; 202.00 and Table No. 2. Plaintiff's medically determinable impairments as of June 30, 1977 were mild arthritis of the spine and a hiatal hernia. *See* document 15 of record, at p. 320; *see also* document 7 of record, at pp. 201, 221–222, 227, 233–234, 235–236, 252, 255, 266, 267–268, 273–274, 275, 292. The Secretary's conclusion that plaintiff retained the residual functional capacity at all times through June 30, 1977 for a full range of light work or, at the very least, for a full range of sedentary work is also supported by substantial evidence, as will be explained more fully *infra*.

In his request to the Appeals Council for review of the ALJ's recommended decision, plaintiff argued that the ALJ failed to give proper weight to the testimony of plaintiff's treating physician, Dr. Dizon. *See* document 15 of record, at pp. 301–304. The Appeals Council concluded, however, that the ALJ gave proper consideration to Dr. Dizon's reports, *see id.* at 298, and the court agrees. Dr. Dizon's finding that plaintiff had been continuously disabled since 1970 was clearly inconsistent with the other evidence of record. For example, plaintiff filed three previous applications for disability benefits claiming that he had become disabled as of 1970, and all three were denied, the last on August 14, 1974. As to medical evidence, reports from Drs. Muller, Kleckner, Gunderson, and Jaeger in 1970 reveal no significant orthopedic impairments. *See* document 15 of record, at pp. 221–222, 227, 233–234, 235–236. Dr. Weisbrod saw plaintiff on August 27, 1973 and found no dorsal spine abnormalities. *See id.* at p. 252. X-rays taken of the lumbar spine on November 20, 1981 "[s]how[ed] mild osteoarthritic changes. No fractures, intervertebral space narrowing, sublaxations or other significant abnormalities [were] seen." *Id.* at 266. Similarly, x-rays taken on March 13, 1984 "[r]eveal[ed] osteoarthritic changes of the

lumbar spine, L2–L3. No plain film evidence of degenerative disc disease or other abnormalities." *Id.* at 275. In addition, Dr. Dizon's opinion is inconsistent with the fact that plaintiff returned to work during the fifteen month period between April 1, 1971 and June 30, 1972, and again for six months in 1979, almost two years after his "date last insured." Finally, even accepting Dr. Dizon's conclusions as true, they do not contradict the ALJ's conclusion that plaintiff has the residual functional capacity to do at the very least sedentary work. *See id.* at 274.

As stated previously, the ALJ concluded that plaintiff could perform a full range of light or sedentary work. Substantial evidence supports this finding. The fact that plaintiff worked for at least six months mowing lawns almost two years after his "date last insured" can be considered as evidence of his ability to perform substantial gainful employment. *See* 20 C.F.R. § 404, 1574; *Milton v. Schweiker*, 669 F.2d 554, 556 (8th Cir.1982) (wages earned during alleged period of disability can be evidence of ability to perform substantial gainful employment). In addition, Dr. Dizon's findings are consistent with the conclusion that plaintiff can perform a full range of sedentary activities. *See* document 7 of record, at p. 274 ("According to him the pain is constant in character, *aggravated with constant motion especially bending and on exertion lifting objects as light as 20 to 30 lbs.*); *see also* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.... Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.") Finally, the fact that plaintiff continued to hunt and fish on a regular basis in 1984, after his "date last insured," as evidenced by documents he himself submitted to this court, is further support for the conclusion that he possessed the residual functional capacity to perform at least a full range of sedentary work. *See* document 8 of record, Attachments ("Apparently John spends most

of his time in the woods, hunting or fishing ...."; "His attitude towards treatment is ambivalent and he refused to attend until after the deer hunting season"; "[Plaintiff] Spoke alot [sic] about his interests in hunting and wildlife. Stated once hunting was over he would attend treatment"; "He [plaintiff] refused to attend for 2 weeks because of hunting season").

Finally, the ALJ found as follows:

In assessing the claimant's residual functional capacity, the issue of pain has been fully considered, and it is found that it is because of pain and discomfort that the claimant was limited to the full range of light work through June 30, 1977, however his pain and discomfort was not of such severity and duration as to limit or restrict him to less than the full range of light work.

*See* document 15 of record, at p. 320, ¶ 12; *see also id.*, at p. 321, ¶ 15. Again, this finding is supported by substantial evidence. Plaintiff's assertions of constant and extensive pain are not completely credible. At the hearing, he testified that he could no longer hunt or fish because of the pain, *see* document 7 of record, at p. 96; document 8 of record, at p. 4, yet, as stated above, plaintiff spent a good deal of his time in 1984 hunting and fishing and refused to attend treatment until after deer hunting season. *See* document 8 of record, Attachments. In addition, plaintiff's medically determinable impairments were limited to mild arthritis of the spine and a hiatal hernia. Thus, while plaintiff's medical impairments cause him some pain and discomfort, they are not so severe as to limit or restrict him to less than a full range of sedentary or light work.

As stated previously, as of June 30, 1977, plaintiff was a younger individual with a limited education. Once it is concluded that plaintiff had the residual functional capacity for a full range of sedentary or light work, a finding of not disabled follows. *See* 20 C.F.R. foll. § 404.1599, Appendix 2, § 201.00, Table No. 1, Rule 201.-24; § 202.00, Table No. 2, Rule 202.17. The court will therefore grant summary judgment in favor of defendant.

One final matter is before the court. In his Report, Magistrate Smyser recommends that the court consider imposing reasonable costs against plaintiff's counsel in connection with the remand of this case to the ALJ. As stated by Magistrate Smyser:

[t]he course of litigation in a social security disability case is often quite lengthy. This is particularly so when a case is remanded to the Secretary by the district court for further consideration. This delay is very regrettable but in some cases it is unavoidable. This is not such a case. Here, counsel now reveals, there was no necessity for a remand to consider the matter of mental impairments. Yet, counsel wholly failed to make any effort when this case was previously before this court to comply with the Rules of Court of the Middle District of Pennsylvania and to inform the court that this was not a case that should be remanded to the Secretary. By this dereliction of responsibility, counsel caused the agency to devote its adjudicatory resources unnecessarily to a rehearing in this case and caused his client to undergo an unnecessary and avoidable delay of about two years in the resolution of this case.

*See* document 22 of record, at p. 2. The court completely agrees with the position of Magistrate Smyser. It was plaintiff's counsel who initially raised the possibility that plaintiff might meet the revised Listing Impairments for psychiatric problems. *See* document 8 of record, at p. 13 and Attachments. Plaintiff's counsel failed to file a brief in opposition to defendant's motion to remand, and counsel also neglected to file any objection to the Magistrate's Report that granted the motion. Thus, plaintiff's counsel has only himself to blame for the unnecessary remand. Nevertheless, rather than impose costs at this time, the court will simply warn plaintiff's counsel that such behavior will not be tolerated in the future.

An appropriate Order will enter.

98

## ORDER

NOW, this 17th day of June, 1988, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) Plaintiff's motion for summary judgment is denied.

(2) Defendant's motion for summary judgment is granted.

(3) Summary judgment is hereby entered in favor of defendant.

(4) The Clerk of Court is directed to close this case.