Beth A. MALLOY, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

Nos. 4:07–cv–193 RWP, 4:08–cv–170.

United States District Court,
S.D. Iowa,
Central Division.

March 31, 2009.

Niki Adalene Fisher, Max Schott & Associates, Des Moines, IA, for Plaintiff.

Richard L. Richards, U.S. Attorneys Office, Des Moines, IA, for Defendant.

## ORDER

ROBERT W. PRATT, Chief Judge.

Plaintiff, Beth A. Malloy, filed a Complaint in this Court on May 7, 2007, seeking review of the Commissioner's decision to deny her claim for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. Subsequently, on May 1, 2008, Plaintiff filed her complaint in case 4:08–cv–170. The cases were consolidated on September 18, 2008. This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).

Plaintiff filed an application for benefits on February 23, 2005, claiming to be disabled since January 7, 2005. The second application was filed January 19, 2007, with an alleged onset of disability date of December 30, 2006. Plaintiff's date of birth is December 1, 1964. Both Administrative Law Judges—Hon. Thomas M. Donahue at the first hearing, and Hon. John E. Sandbothe at the second hearing—stopped the sequential evaluation at step 4, finding that Plaintiff retains the residual functional capacity to perform her past relevant work as a circulation clerk, accounting clerk, order clerk, and transcribing machine operator. Plaintiff's primary alleged disabling condition is fibromyalgia, an impairment which was found to be severe at the second step of the sequential evaluation.

## DISCUSSION

We will affirm the ALJ's decision "[i]f the ALJ's findings are supported by substantial evidence on the record as a whole," an inquiry that requires us to consider evidence in the record that detracts from the ALJ's decision. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the decision." *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir.2004).

We will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir.2008). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." *Id.* (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir.2007)). Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005).

*Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir.2008.) In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel*, 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger*, 522 F.2d 13, 16 (8th Cir.1975).

The Court has read each and every page of both administrative records, and has considered all of the evidence therein, both that which supports the ALJs' decisions and that which detracts therefrom. Only that evidence which the Court considers most material, however, will be discussed in this Opinion. The Court wishes to emphasize, however that all evidence, has been considered.

In the opinion of the Court, this case turns on a proper evaluation of the treating physician's medical opinion of the functional effects of Plaintiff's fibromyalgia. In *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir.1996), Chief Judge Posner wrote that fibromyalgia is a common, but elusive and mysterious, disease which shares many features with chronic fatigue syndrome. He pointed out that fibromyalgia's causes are unknown, there is no cure, and that its symptoms are entirely subjective. In the case at bar, both ALJs erroneously appear to equate subjective symptoms with incredible symptoms. Judge Posner, at page 307 of his opinion states: "Some people may have such a severe case of fibromyalgia as to be totally disabled from working." The relevant specialist in cases of fibromyalgia is a rheumatologist. *Id.*

On November 14, 2006, Mark A. Burdt, D.O., a rheumatologist at Mercy Arthritis and Osteoporosis Center, wrote that Plaintiff has "significant functional limitations related to her chronic pain syndrome." He stated that her pain limits her ability to work, activities of daily living, and recreational activities. The doctor stated that he and the other doctors in his office had maximized the medical treatment available for Plaintiff's condition, and that more frequent office visits would not produce improvement in Plaintiff's condition. The doctor stated, point blank, "Therefore, I do believe she is 100% disabled. As has been documented, she suffers chronic diffuse pain. She has pain on a day-to-day basis, which provides significant functional limitations." He went on to state that even on Plaintiff's "good days," her ability to work is "greatly limited." The doctor was very specific stating that Plaintiff's pain symptoms preclude her from doing even sedentary work such as she had done in the past. Tr. at 319–20 of 4:07–cv–193. ALJ Donahue considered but rejected this opinion because it was based, in part, on the history the doctor had taken from Plaintiff. The ALJ also stated that the opinion was rejected because there was no evidence of muscle atrophy, decreased range of motion, muscle weakness or loss of sensation. Tr. at 20 of 4:07–cv–193. In the opinion of the Court this is simply the ALJ's thinly disguised attempt to substitute his opinion for that of the doctor. *See, Ness v. Sullivan,* 904 F.2d 432, 435 (8th Cir.1990)("... the ALJ ignored the law of this circuit, which states that the ALJ must not substitute his opinion for those of the physician.") Furthermore, there is no evidence that muscle atrophy, decreased range of motion, muscle weakness or loss of sensation are indicia of fibromyalgia.

On February 28, 2007, Plaintiff saw Robert C. Winchell, D.O., for a consultative examination at the request of Disability Determination Services. Dr. Winchell listed the medical records provided to him: A note from Dr. Burdt dated 11/20/06; and, a note from Dr. Peacock (another of Plaintiff's treating primary care doctor) dated 1/12/07. Dr. Winchell wrote: "There were no other medical records available for review." After his examination, Dr. Winchell wrote that he found no objective evidence to support the diagnosis of fibromyalgia. He opined that Plaintiff should be able to lift and carry at least 30 pounds on occasion and 15 to 18 pounds more frequently. He opined that Plaintiff should be able to stand, move about, walk and sit during a normal work day. "In

short, I see no physical reason why this patient could not be gainfully employed full-time should she choose to do so." Tr. at 320–23 of 4:08–cv–170.

On September 25, 2007, Dr. Burdt reviewed Dr. Winchell's report and wrote a report taking issue therewith. Dr. Burdt pointed out that Plaintiff had been his patient since 2000, and that the diagnosis of chronic pain related to fibromyalgia was based on ACR [American College of Rheumatology] revised criteria of 1990. The doctor wrote that Plaintiff's symptoms of sleep disturbance, chronic fatigue, and myofascial pain were typical of the illness. Dr. Burdt pointed out that he is a clinical rheumatologist, and that he had no doubt as to the diagnosis. Regarding Dr. Winchell's assessment, Dr. Burdt wrote: "Again, I disagree with his functional assessment. Based upon her history over the last number of years, she does have significant physical limitations. In the setting of fibromyalgia, one may appear quite 'healthy.' Again, an assessment of functional capacity based upon one visit is very difficult to make." Dr. Burdt continued: "The simple act of sitting and doing clerical-type work has been difficult because of pain in the upper back, lower back, and shoulders. In addition, the fatigue she suffers makes it very difficult for her to complete work of consistent quality on any sustained basis." He concluded: "At this point, I do not feel she is capable of maintaining gainful employment on a sustained basis. I believe any attempts to place her back in the workplace would be met with frequent absences from work, poor job performance, and ultimate failure." Tr. at 416–17 of 4:08–cv–170.

ALJ Sandbothe wrote that he gave more weight to the opinion of Dr. Winchell because he performed "various tests" and because he "had the opportunity to review medical evidence from the claimant's treating doctors." As pointed out above, however, Dr. Winchell stated that only two documents had been provided for his review. In *Mateer v. Bowen*, 702 F.Supp. 220 (S.D.Iowa 1988), the Court wrote:

Plaintiff argues that the value of Dr. Taylor's evaluation is seriously eroded by the fact that the only medical history he was provided consisted of a one-page letter, dated April 30, 1986, from Dr. Hermann, plaintiff's treating physician, and Dr. Owens' psychological report (Tr. 387). Plaintiff relies on *Gavin v. Heckler*, 811 F.2d 1195 (8th Cir.1987), wherein the Eighth Circuit Court of Appeals declined to give any weight to a report by a psychiatrist who made a diagnosis without having reviewed the copious medical evidence included in the record. The court agrees with plaintiff and finds that the report submitted by Dr. Taylor herein is of little or no value. Furthermore, the court would indicate to the Secretary that it should always provide all medical records to any physician from whom he solicits an opinion regarding any social security case. There are numerous cases which specifically point out the Secretary's duty to develop the record. Further, a complete record is central to the adjudication of the issues on appeal. Accordingly, the court finds that the ALJ did not fulfill his responsibility in this case. *See Milton v. Schweiker*, 669 F.2d 554, 556 (8th Cir. 1982).

█ In *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982)(en banc), the Court wrote that the most important issue in a disability case is establishing residual functional capacity. The Court went on to define residual functional capacity as: " . . . not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real

people work in the real world." A footnote to this quotation states that as a general rule little weight is afforded to "... reports of non-examining physicians, and reports of consulting physicians who examine the claimant only on one occasion." In the case at bar, given the totality of the evidence, both Administrative Law Judges erred by disregarding the opinions of the treating physician, Dr. Burdt in favor of Dr. Winchell's.

In both hearings, vocational experts testified that if Plaintiff required frequent absences from work, competitive work is not possible. Dr. Burdt, who it must be remembered is an expert on Plaintiff's primary impairment—fibromyalgia, stated that Plaintiff is not capable of sustained employment at any level, even sedentary clerical type work. In this case, that opinion trumps other, less substantial, evidence in the record. In *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir.1989), Judge Richard S. Arnold, who wrote for the Court in *McCoy*, wrote that substantial gainful activity means the performance of substantial services with reasonable regularity either in competitive or self-employment. Plaintiff has proven with medical evidence that she no longer has that ability.

In the case *sub judice*, Plaintiff has proven her case with medical evidence. The ALJs decisions are not supported by substantial evidence on the record as a whole. Under such circumstances there is no need to remand for any reason other than to calculate the benefits to which Plaintiff is entitled. *Thomas, supra* at 670. *See also, Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir.1987):

> Ordinarily, where the Secretary has incorrectly allocated the burden of proof based upon an erroneous finding that the claimant can return to his prior

work, we will remand for further proceedings. However, where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his disability by medical evidence on the record as a whole, we find no need to remand.

## CONCLUSION AND DECISION

It is the holding of this Court that Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court finds that the evidence in this record is transparently one sided against the Commissioner's decision. *See Bradley v. Bowen*, 660 F.Supp. 276, 279 (W.D. Arkansas 1987). A remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is entitled.

The final decision of the Commissioner is reversed and the Commissioner is ordered to award Plaintiff the benefits to which she is entitled.

The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See also, McDannel v. Apfel*, 78 F.Supp.2d 944 (S.D.Iowa 1999) (discussing, among other things, the relationship between the EAJA and fees under 42 U.S.C. § 406B), and LR 54.2(b) [1]. *See also, Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002); *Mitchell v. Barnhart*, 376 F.Supp.2d 916 (S.D.Iowa 2005).

IT IS SO ORDERED.

---

1. N.B. Counsel is reminded that LR 54.2(b), states that an EAJA application "must specifically identify the positions taken by the gov-ernment in the case that the applicant alleges were not substantially justified."